COUNTY OF WESTCHESTER, Plaintiff,

v.

TOWN OF GREENWICH, CONNECTICUT, Commissioner of Transportation of the State of Connecticut, Laurelton Nursing Home, Inc., Greenwich King Street Associates II, L.P., the Convent of the Sacred Heart, and Mildred Tomonto, Defendants.

No. 90 Civ. 1302 (GLG).

United States District Court, S.D. New York.

Sept. 10, 1990.

Marilyn J. Slaaten, Westchester County Atty., White Plains, N.Y. (Paul D. Sirignano, Sr. Asst. County Atty., of counsel), for plaintiff.

John E. Meerbergen, Town Atty., Greenwich, Conn. (John E. Meerbergen, of counsel), for defendant Town of Greenwich, Conn.

Clarine Nardi Riddle, Connecticut Atty. Gen., Hartford, Conn. (Kenneth N. Tedford, Asst. Atty. Gen., of counsel), for defendant Com'r of Transp. of the State of Conn.

Stuart A. McKeever, Westport, Conn. (Stuart A. McKeever, of counsel), for defendant Laurelton Nursing Home, Inc.

Cummings & Lockwood, Stamford, Conn. (Chase T. Rodgers, of counsel), for Greenwich King Street Associates II, L.P.

Badger, Fisher & Cohen, Greenwich, Conn. (Miles F. McDonald, Jr., of counsel), Berle, Kass & Case New York City (Charles S. Warren, Karl S. Coplan, of counsel), for defendant The Convent of the Sacred Heart.

Sive, Paget & Riesel, New York City (David Sive, of counsel), for Mildred Tomonto.

## OPINION

GOETTEL, District Judge.

Cases involving the acronym "NIMBY," which stands for "Not In My Backyard," have been feverishly litigated throughout the country. In this case, we are presented with a variation on the theme, and have developed what we believe is a new acronym, NIMAS, which stands for "Not In My Airspace."

## I. FACTS

Plaintiff, the County of Westchester, which is located in New York State, owns and operates the Westchester County Airport ("WCA"). WCA has been in existence for approximately forty years and is utilized by both commercial and private aircraft. WCA should not be confused in terms of size with either of New York's two major airports, Kennedy and La Guardia, although expansion plans are presently under consideration.[1] Until February 1989, WCA had two runways in operation, one of which was used on a limited basis. This alternate runway, known as Runway 11/29, was used only in emergency situations or when prevailing wind conditions made its use appropriate.[2] In February 1989, however, the Federal Aviation Administration ("FAA") ordered a reduction in the usable length of Runway 11/29 due to the incursion of certain trees into the mandatory "clear zone."[3] This clear zone is established by the FAA and requires a specified amount of unencumbered airspace for airplanes to land and take off. See 14 C.F.R. § 77.25 (1990). If intrusions into this zone are present, aircraft will be forced to land or take off at an angle that is unsafe. In limiting the available length of Runway 11/29, the FAA attempted to avoid such a situation. Unfortunately for plaintiff, this limitation also has severely curtailed the use of Runway 11/29 because it is now of an insufficient length to permit landings and takeoffs by many types of airplanes.

The defendants, excluding the Commissioner of Transportation of the State of Connecticut, are the property owners upon whose land the intruding trees are located. This, by itself, is probably no different than situations existing throughout the country where property owners have trees protruding into the airspace utilized by a neighboring airport. Generally, a state's powers of eminent domain can be exercised to insure that the requisite "clear zone" is available. In the case at bar, however, the property owners are all Connecticut residents and the trees are all located in Connecticut, notwithstanding the fact that WCA is located entirely within New York. This results from the rather jagged borders of New York and Connecticut in this area. In essence, the Town of Greenwich, Connecticut juts into New York, causing aircraft utilizing WCA's Runway 11/29 to fly over Connecticut immediately upon taking off or before landing. The fact that the trees are located in Connecticut is the precise cause of this litigation since all parties agree that New York cannot exercise its powers of eminent domain over property located in another state.

In February 1990, plaintiff instituted this action for injunctive and declaratory relief. This action was only started, however, after plaintiff's offer to trim the trees to a satisfactory level at its own expense was rejected. The property owner defendants claim they are not, and have never been, interested in having any airplanes flying overhead, and are taking advantage of the fact that the ball is in their court now that the trees have reached an intrusive level. They have adopted this stance even though it is clear that the proximity of WCA to

---

1. This expansion project has also fostered litigation.

2. The two runways are not located parallel to one another, thereby allowing for landings and takeoffs in different wind conditions.

3. Specifically, the FAA reduced the usable length of Runway 11/29 from approximately 4,450 feet to 3,100 feet.

Connecticut means that WCA is used by both Connecticut and New York residents.[4]

Plaintiff raises a number of claims in its Complaint. First, it claims that the trees interfere with interstate commerce, ostensibly in violation of the commerce clause of the Constitution. Moreover, plaintiff asserts that the Federal Aviation Act mandates that there is public right of free access to the navigable airspace of the United States. Plaintiff also suggests that defendants' trees create both statutory and common law nuisances. Finally, it is alleged that the use of the airspace for approximately forty years has given plaintiff a prescriptive easement in this flight zone. With respect to the Commissioner of Transportation of the State of Connecticut (the "Commissioner"), plaintiff claims that the Commissioner has the obligation of insuring that there are no obstructions to airports, and that this duty is not limited to airports located in Connecticut.

Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12. The Commissioner has moved separately and contends that to the extent plaintiff is seeking his compliance with state law, this court lacks jurisdiction since the eleventh amendment bars such a suit. Moreover, he claims that there is no federal law establishing a cause of action in favor of plaintiff since the commerce clause is only at issue when states, not private actors, interfere with commerce and since the Federal Aviation Act, while announcing a general policy, does not create a private cause of action. The remaining defendants have moved jointly pursuant to rule 12(b)(6) and agree with the Commissioner's arguments with respect to a potential federal cause of action. As to the state law claims, they contend that neither a claim for nuisance, statutory or common law, nor an easement by prescription can be established based on the facts presented.

## II. DISCUSSION

We will address the two motions separately.

### A. *Commissioner's Motion*

In the Complaint, plaintiff seeks an order compelling the Commissioner "to require the removal of the encroachments and obstructions to aerial navigation and the safe, efficient use of Runway 11/29 at the Westchester County Airport." Complaint ¶ (a). Plaintiff then contends that the Commissioner can enforce such an order pursuant to Connecticut law giving him authorization to remove any "obstacle so located as to constitute a hazard to aerial navigation or to the efficient or safe use of any airport." Conn.Gen.Stat.Ann. § 15–74(a) (West 1988). As noted, however, even assuming the Commissioner's authority is not limited to in-state airports, the Commissioner has moved to dismiss on eleventh amendment grounds.

■ The eleventh amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. First, it is clear that while plaintiff is a County, not an individual, it is still a "citizen" for eleventh amendment purposes. *County of Monroe v. Florida,* 678 F.2d 1124, 1131 (2d Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). In addition, the amendment has been interpreted by the Supreme

---

4. Notwithstanding defendants' suggestion that they are against having the airplanes at all, our cynical nature leads us to believe that if the price were right, defendants would be willing to trim their trees. In fairness to defendants, however, they raise a compelling argument that if this were a condemnation proceeding, the governmental entity condemning the property or acquiring an easement could be forced to compensate them under a constitutional "takings" analysis. In fact, under Connecticut statutory law, a party whose land has been taken may be entitled to compensation even if a constitutional "taking" is not established. *Powers v. Ulichny,* 185 Conn. 145, 440 A.2d 885, 890 (1981); *see* Conn.Gen.Stat.Ann. § 15–73 (West 1988). Therefore, defendants question the equity of having the same property "taken" by an out-of-state private entity without compensation over and above the cost of trimming the trees. Plaintiff suggests that an inverse condemnation counterclaim is the appropriate procedural vehicle for defendants to assert such a claim.

Court to prohibit suits by citizens of one state not only against another state itself, but also against officials of another state for injunctive relief based on violations of state law. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984); *Dube v. State Univ. of New York,* 900 F.2d 587, 595 (2d Cir.1990).

In response to this argument, plaintiff offers the following rather confusing response. Plaintiff recognizes the eleventh amendment's prohibition, but asserts that it is seeking injunctive relief based on violations of the commerce clause of the Constitution and the Federal Aviation Act. Such a suit would not be barred by the eleventh amendment, to the extent plaintiff is seeking injunctive relief based on the state official's violations of federal law. *See Papasan v. Allain,* 478 U.S. 265, 276–77, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909; *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). Rather oddly, however, plaintiff then asserts in a footnote that the Commissioner can order the removal of the trees allegedly violating the commerce clause and the Federal Aviation Act pursuant to section 15–74 of the Connecticut General Statutes referred to above.

■ To the extent plaintiff is seeking any relief from the Commissioner based on Connecticut state law, it is clear that the eleventh amendment prohibits such a suit. Thus, we must turn to the two federal claims ostensibly raised by plaintiff. The commerce clause states that Congress has the power "[t]o regulate Commerce ... among the several States." U.S. Const. art. 1, § 8, cl. 3. While itself not prohibiting any actions by a state, the clause has been interpreted as an "implied restraint on state regulatory powers." *United Bldg. & Constr. Trades Council v. Mayor of Camden,* 465 U.S. 208, 220, 104 S.Ct. 1020, 1028, 79 L.Ed.2d 249 (1984). However, when the state is merely acting as a market partici-

pant, as opposed to a market regulator, the commerce clause is not implicated. *Id.; White v. Massachusetts Council of Constr. Employers,* 460 U.S. 204, 206–08, 103 S.Ct. 1042, 1043–44, 75 L.Ed.2d 1 (1983). In the case at bar, the purported interference with commerce has been caused by property owners acting in a proprietary fashion. If a governmental agency can act as a market participant without violating the commerce clause, *a fortiori,* a property owner, even a governmental owner like the Town of Greenwich, does not violate the commerce clause by growing trees on its property.

■ Plaintiff's alternate argument is that defendants are violating the Federal Aviation Act's mandate that "[t]here is recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States." 49 app. U.S.C. § 1304 (1982).[5] Plaintiff attempts to hang its hat on this clause, arguing that the clause allows a private party to institute an action against a party who is interfering with this right and, in the case of the Commissioner, against one who has the authority to protect this right. The problem with this argument, however, is that nothing in the statute or the statute's legislative history suggests that Congress meant to create a private right of action in favor of the owner of an airport.

The Federal Aviation Act is an extremely broad statute, attempting to govern such factors as safety, maintenance, competition, non-discriminatory access to airlines, and research and development. 49 app. U.S.C. § 1302(a) (1982). Nowhere, however, is a private cause of action expressly created in favor of one who believes that rights inuring to his or her benefit under the Act have been violated. In fact, the Act specifically permits the filing of a complaint with the Secretary of Transportation or the Civil Aeronautics Board "with respect to anything done or omitted to be done by any person in contravention of any

---

5. In conjunction, plaintiff also refers to 49 app. U.S.C. § 1508(a) (1982), which states that "[t]he United States of America is declared to possess and exercises complete and exclusive national sovereignty in the airspace of the United States."

provisions of this chapter, or of any requirement established pursuant thereto." 49 app. U.S.C. § 1482(a) (1982). Additionally, courts generally have refused to imply a private right of action based on the Act's provisions. *See Montauk–Carribbean Airways, Inc. v. Hope,* 784 F.2d 91, 97 (2d Cir.) (no private action based on either 49 app. U.S.C. § 1305(a), which preempts states from enacting laws regarding rates, routes, or services, or 49 app. U.S.C. § 1349(a), which prohibits the exclusive use of any landing area or air navigation facility upon which federal funds have been expended), *cert. denied,* 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986); *Western Air Lines, Inc. v. Port Auth. of New York & New Jersey,* 658 F.Supp. 952, 955 (S.D.N.Y.1986) (no private action based on 49 app. U.S.C. § 2210, which requires an airport's facilities to be made available on fair and non-discriminatory terms), *aff'd on other grounds,* 817 F.2d 222 (2d Cir.1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 1467, 99 L.Ed.2d 697 (1988). However, courts have occasionally implied a private right of action when an individual's right to airline access has been denied on a discriminatory basis. In *Fitzgerald v. Pan American World Airways,* 229 F.2d 499, 501–02 (2d Cir.1956), for example, the Second Circuit implied a cause of action in favor of individuals who were refused access to an airline because of their race.[6] As to the section in force at that time which was analogous to 49 app. U.S.C. § 1482(a), which permits a complaint to be made to the Secretary of Transportation or the Civil Aeronautics Board, the court concluded that the section was related only to prospective relief and, therefore, a private right of action was necessary to redress past harms. *Id.* at 502; *see also Sanders v. Air India,* 454 F.Supp. 1371, 1375 (S.D.N.Y.1978) (citing cases creating private cause of action under Act based on discrimination).

We have not, however, been pointed to any case establishing a cause of action in favor of an airport based solely on section 1304's declaration of a right to airspace transit. In determining whether a private cause of action should be implied in a particular situation, we must look to "whether the plaintiff is a member of the class for whose benefit the statute was enacted; whether Congress intended to create a private right of action; whether a private right of action is consistent with the underlying legislative scheme; and whether the matter is traditionally relegated to state law." *Montauk–Carribbean Airways,* 784 F.2d at 97 (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)). Perhaps the most significant of these factors is Congress' intent, *see Touche Ross & Co. v. Redington,* 442 U.S. 560, 579, 99 S.Ct. 2479, 2491, 61 L.Ed.2d 82 (1979), and, as we have previously indicated, there is no suggestion that Congress intended to create a private cause of action. *See* 1958 U.S.Code Cong. & Admin.News 3741 (legislative history of Federal Aviation Act of 1958 does not indicate intent to establish a private cause of action). Moreover, while airline regulation is generally a matter of federal law, section 1304 was not necessarily enacted for the benefit of airport owners, but rather, appears to have been adopted as part of a scheme to insure that consumers are afforded non-discriminatory access to the airlines. *Cf. Sanders,* 454 F.Supp. at 1378 (refusing to grant private right of action to travel agents alleging discriminatory payment of commissions by airline). Specifically, the section establishes "in behalf of any *citizen of the United States* a public right of freedom of transit through the navigable airspace of the United States." 49 app. U.S.C. § 1304 (1982) (emphasis added). The definition of "citizen of the United States," however, is limited to individuals who are citizens, partnerships in which each member is a citizen, and domestic corporations having as citizens its president, two-thirds of its Board of Directors, and the holders of seventy-

---

**6.** The court implied a cause of action based on the following section:

No air carrier ... shall make, give, or cause any undue or unreasonable preference or advantage to any particular person ... in any respect whatsoever or subject any particular person ... to any unjust discrimination or undue or unreasonable prejudice or disadvantage in any respect whatsoever.

49 app. U.S.C. § 1374(b) (1982).

five percent of the voting interest in the corporation. 49 U.S.C. app. § 1301(16) (1982). There is no mention of a county government within this definition. Therefore, plaintiff is not within the class Congress meant to protect. Even if there was a private right of action under this section, it is doubtful whether plaintiff has standing to assert such a claim.

For all the foregoing reasons, plaintiff has no cause of action pursuant to the Federal Aviation Act. Therefore, since we previously concluded that we lacked jurisdiction over plaintiff's state law claims against the Commissioner based on the eleventh amendment, and since we also concluded that the commerce clause created no rights against the Commissioner, we must dismiss the Commissioner from this action. Plaintiff's recourse, however, may be to contact the Civil Aeronautics Board or the Secretary of Transportation pursuant to section 1482(a) to request them to force some action by the Commissioner.

Although we must dismiss the Commissioner from this action as a matter of law, we do so with great consternation. We simply do not understand the position of the Commissioner and, in turn, the State of Connecticut, in refusing to require the defendants to trim their trees, especially since plaintiff is willing to foot the bill. Clearly, numerous Connecticut residents, both individuals and corporations, utilize WCA. If WCA ultimately closes down, these entities no doubt will be harmed. More importantly, since Connecticut residents fly on airplanes using WCA, and since the airlines using Runway 11/29 continue to fly over Connecticut airspace, it appears that the state is placing the health and safety of its residents in jeopardy. If there is an accident because of the reduced availability of Runway 11/29, it is highly likely that Connecticut residents and/or property will be harmed. It seems to us that Connecticut's failure to take any action is a dereliction of its duties and we surely hope that the state is not refusing to act simply because of a desire to encourage the use of its own airports.

**B. *Other Defendants' Motion***

As noted, the other defendants have jointly moved to dismiss. These defendants own the property on which the intrusive trees are located. They claim that there is no federal cause of action that can be asserted and, moreover, that the claims based on state law are ineffectual. As to the federal claims plaintiff raises, these are the same as those asserted against the Commissioner and, for the reasons previously discussed, they must be dismissed. We will now turn to the alleged violations of state law.[7]

**1. Nuisance**

■ Plaintiff raises claims based on both common law and statutory public nuisance. With respect to the statutory nuisance claims, plaintiff makes reference to two sections of Connecticut's statutes. First, plaintiff points to section 15–73, which declares that any encroachment to an airport "is declared to be a public nuisance and may be abated in the manner prescribed by law for the abatement of public nuisances." Conn.Gen.Stat.Ann. § 15–73 (West 1988). However, the section's preceding provisions, which grant the Commissioner or a municipality the power to take easements in airspace over land and water in order to provide unobstructed airspace for landing and taking-off, specifically limit the Commissioner's power to airports operated by the state and limit a municipality's power to airports located within its jurisdiction. Thus, while the intrusion in the case at bar might have been a public nuisance if WCA were located in Connecticut and operated by the state of Connecticut or a Connecticut municipality, its situs in New York renders this statute inapplicable. *See Powers v. Ulichny*, 185 Conn. 145, 440 A.2d 885, 891 (1981) (§ 15–73 applies only to

---

7. The Act specifically states that any pre-existing common law remedies remain effective. 49 app. U.S.C. § 1506 (1982). Additionally, the parties agree that we must apply New York's choice-of-law rules and that New York would apply the law of the situs of the real property in question. Thus, our consideration of plaintiff's common law claims will be governed by the laws of Connecticut.

"state acquired or operated and municipal airports"). Moreover, there is only a public nuisance under this statute if there is an encroachment on "any airport protection privileges acquired pursuant to the provisions of this section." Conn.Gen.Stat.Ann. § 15–73 (West 1988). Since plaintiff has not acquired such rights, it is not afforded any protection by the statute. Similarly, section 15–74, which we have previously discussed, also is unavailing since it only creates rights in favor of the Commissioner to remove obstructions to air navigation and, moreover, it does not declare such obstructions to be nuisances. Therefore, since neither of the two statutory provisions plaintiff has cited establishes a public nuisance claim, the cause of action must be dismissed.

■ Turning to plaintiff's claim based on common law nuisance, both parties agree that the following elements must be proven for plaintiff to prevail:

(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; ... (4) the existence of the nuisance was a proximate cause of the plaintiffs' injuries and damages ...; [ (5) ] ... the condition or conduct complained of interfered with a right common to the general public ...; [and (6) ] ... the alleged nuisance was absolute, that is, that the defendants' intentional conduct, rather than their negligence, caused the condition deemed to be a nuisance....

*Connecticut v. Tippetts–Abbett–McCarthy–Stratton,* 204 Conn. 177, 527 A.2d 688, 692 (1987) (citations omitted). While plaintiff claims it has adequately pled each of these elements, defendants contend that the mere growing of trees is not a naturally dangerous condition and also that they are not using their land in an unlawful or unreasonable manner. Moreover, defendants assert that plaintiff's damages, if any, are self-inflicted and only occurred because of the specialized use plaintiff has made of its land.

Turning to the defendants' first argument, we recognize that Connecticut law requires a nuisance to be an "inherently dangerous condition that has a natural tendency to inflict injury upon persons or property." *Quinnett v. Newman,* 213 Conn. 343, 568 A.2d 786, 788–89 (1990). We are not required to proceed in a vacuum, however, when applying this test to a particular set of facts. Defendants' proposed interpretation of this requirement would necessitate a finding that the activity itself, in this case, the planting and growing of trees, be inherently dangerous. Obviously, the planting trees in and of itself is not inherently dangerous. However, when one permits his or her trees to grow to such an extent that travellers in the public airspace, as well as those on the ground, can be injured, a dangerous *condition* develops. In *Salomone v. Boulanger,* 32 Conn.Supp. 115, 342 A.2d 61, 61 (1975), for example, the court refused to dismiss a claim of public nuisance where a bicyclist riding on a public highway collided with a car and sued a property owner who had erected a fence that allegedly blocked his vision and interfered with his audibility. The fence by itself was not dangerous, but in the context of being adjacent to a public highway, a dangerous condition was created.[8] *Cf. Planning & Zoning Comm'n of Middlefield v. Zemel Bros.,* 29 Conn.Supp. 45, 270 A.2d 562, 569 (1970) (rock music festival enjoined on nuisance grounds, notwithstanding the fact that the festival would not necessarily have been dangerous in a larger community). In the case at bar, defendants' trees, while not inherently dangerous in some locations, have created a dangerous condition in light of the location of WCA and Runway 11/29. It is of particular significance that defendants were well aware of plaintiff's use of the airspace before they allowed their trees to reach an intrusive level. At least for purposes of defeating a motion to dismiss, plaintiff has adequately alleged an interference with a

8. In *Salomone,* the court found a cause of action had been stated even though there was no actual physical invasion of the public right of way.

public right that has created a threat of common injury. *See Town of West Hartford v. Operation Rescue*, 726 F.Supp. 371, 381 (D.Conn.1989) (citations omitted).

■ Defendants next argue that growing trees on their property is neither unreasonable or unlawful. Clearly, it is not unlawful. Whether or not it is unreasonable involves a balancing of the competing interests of the parties and is a question that must ultimately be resolved by the trier of fact. The proper inquiry is not whether the activity is permitted, but whether it is a reasonable " 'use of the property in the particular locality under the circumstances of the case.' " *Nicholson v. Connecticut Half-Way House, Inc.*, 153 Conn. 507, 218 A.2d 383, 385 (1966) (quoting *Wetstone v. Cantor*, 144 Conn. 77, 127 A.2d 70, 72 (1956)). Once again, growing trees generally is not unreasonable, but the ultimate question can only be resolved by analyzing all the underlying facts and circumstances. In the case at bar, plaintiff contends that it is only seeking the trimming of trees at its own expense so as to continue an activity it has engaged in for forty years. This is sufficient to create a question of fact as to whether defendants' actions are reasonable.[9]

For all the foregoing reasons, defendants' motion to dismiss the common law public nuisance claim is denied.

### 2. Prescriptive Easement

The final claim plaintiff makes is that its forty years of using the airport has given it a prescriptive easement in the airspace above defendants' property. In Connecticut, an easement by prescription can be obtained by a use that is " 'open, visible, continuous and uninterrupted for fifteen years and made under a claim of right.' " *Klar Crest Realty, Inc. v. Rajon Realty Corp.*, 190 Conn. 163, 459 A.2d 1021, 1024 (1983) (quoting *Andrzejczyk v. Advo Sys., Inc.*, 146 Conn. 428, 151 A.2d 881, 883 (1959)); *see also* Conn.Gen.Stat.Ann. § 47–37 (West 1988) ("[n]o person may ac-

quire ... any easement ... over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years"). Defendants raise a number of challenges to this claim. First, they contend that the airlines that own the airplanes using the airspace in question are the only ones who may have acquired such an easement since plaintiff does not own any of the airplanes that fly over defendants' property. Moreover, defendants argue that plaintiff had no claim of right to use the airspace that differed from the rights of the general public. Defendants also claim that a private party cannot obtain an easement in the airspace over another's property. Finally, defendants suggest that the general public cannot obtain an easement in private property and, to the extent the airspace into which the trees have grown is public property, a private party cannot obtain it by prescription. Plaintiff, of course, disputes each of these contentions.

■ With respect to the argument that the airport is not the appropriate party to seek an easement, we refer to the Supreme Court's decision in *Griggs v. Allegheny County*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962). In *Griggs*, Allegheny County owned the Greater Pittsburgh Airport and was sued by a property owner whose property was located near one of the airport's runways. The claim was that flights over the plaintiff's property constituted a "taking" without just compensation due to the intrusiveness of the flights. The Court concluded that there was a taking and ordered Allegheny County to compensate the plaintiff. Specifically, the Court concluded that it was the airport and, hence, the County which owned the airport that was liable, even though private airlines having no actual connection to the airport were the ones flying over the plaintiff's property and even though the Civil Aeronautics Administrator had authorized the particular activities. It was the Coun-

9. To the extent defendants claim that plaintiff has brought its injuries upon itself through the specialized use of its property, we find this argument disingenuous since it is plaintiff who has been utilizing the airspace for forty years and it is only recently that defendants' trees have reached the requisite "clear zone."

ty, as "promotor, owner, and lessor of the airport," which "took the air easement in the constitutional sense." *Id.* at 89, 82 S.Ct. at 534; *see also Town of East Haven v. Eastern Airlines, Inc.,* 331 F.Supp. 16, 34 (D.Conn.1971) (easement deemed to have been "taken" by owner and operator of airport, not federal government or individual airlines). Analogizing *Griggs* to the case at bar, we find that plaintiff, as owner of WCA, which has been in operation for forty years, has the right to assert an easement by prescription. It is the airport that draws the airplanes and, if an easement can be established, it runs in favor of plaintiff, as owner of the airport.

We must also reject defendants' second argument, which suggests that there was no claim of right under which WCA was operating that differed from that of the general public. The FAA creates a general "public right of freedom of transit through the navigable airspace of the United States." 49 app. U.S.C. § 1304 (1982). Furthermore, "navigable airspace" is defined as "airspace above the minimum altitudes of flight prescribed by regulations issued under this chapter, and ... include[s] airspace needed to insure safety in take-off and landing of aircraft." 49 app. U.S.C. § 1301(29) (1982). Although we previously concluded that these general provisions did not create a private right of action in favor of plaintiff, they surely give plaintiff a valid claim of right to use this airspace. Moreover, while the general public may have a right to travel in the airspace, there is no suggestion that anyone other the airlines using WCA flew over defendants' property. It seems clear that for as long as Runway 11/29 has been in operation, plaintiff has "perform[ed] some act to the knowledge of the servient owner clearly indicating [its] individual claim of right." *Klar Crest Realty,* 459 A.2d at 1025 (citations omitted). If defendants legitimately believed that the overhead flights violated their rights prior to the growth of their trees into the "clear zone," they surely would have known whom to sue.

■ Finally, we turn to defendants arguments regarding the general acceptability of a claim for an airspace easement. At common law, the general rule was that a property owner's rights extended to the heavens. As recognized by the Supreme Court, however, the idea that one's "land extended to the periphery of the universe ... has no place in the modern world." *United States v. Causby,* 328 U.S. 256, 260–61, 66 S.Ct. 1062, 1065, 90 L.Ed. 1206 (1946). Nonetheless, one still has the right to "exclusive control of the immediate reaches of the enveloping atmosphere," *id.* at 264, 66 S.Ct. at 1067, which of course includes the right to plant trees. Thus, in the case of air travel, there is a balancing of the competing interests of the property owner and the public at large.

Defendants argument in favor of a general prohibition against air easements seems to ignore this balancing and hinges on the idea that their rights should extend to the heavens. We have not seen any case in Connecticut squarely addressing this issue and are not persuaded by the cases cited by defendants in support of their argument. First, in *Sticklen v. Kittle,* 168 W.Va. 147, 287 S.E.2d 148 (1981), the court was faced with a regional airport's attempt to enjoin construction of a school on land located adjacent to the airport. The school allegedly would have interfered with the flight patterns of airplanes using the airport and the airport sought to assert a prescriptive easement. The court held that an "avigation easement in the airspace used by aircraft over lands adjacent to an airport cannot be acquired by prescription." 287 S.E.2d at 155. The court was concerned that such an easement would present problems if the use of the airspace over a particular tract ever changed and more frequent flights occurred. This case is distinguishable on a number of grounds from the facts before us. First, we are not dealing with a purely avigation easement, which refers to the right to use the airspace above a parcel of land at such low and frequent levels that it becomes a taking of property. *See United States v. Brondum,* 272 F.2d 642, 645 (5th Cir.1959). If this were the case, defendants surely

would have instituted their own action a long time ago. Instead, plaintiff is seeking a combination of a right to fly over defendants property and an obstruction easement, which authorizes the removal of obstructions in the public airspace. Moreover, as to the potential difficulty of enforcing such an easement, it seems clear that as long as the airspace is used at level similar to that which has been used during past years, there is no difficulty presented. Unlike the situation in *Sticklen,* where the easement was sought over a empty plot of land, plaintiff in the case at bar clearly has specific flight patterns in mind.

Another case defendants cite is *Shipp v. Louisville & Jefferson County Air Board,* 431 S.W.2d 867 (Ky.1968), *cert. denied,* 393 U.S. 1088, 89 S.Ct. 880, 21 L.Ed.2d 782 (1969). In *Shipp,* the court refused to grant an easement to a public air board because the law giving the board the right to utilize the airspace in question was not adopted until after the private property owner's infringing trees already had existed for a number of years at what the statute deemed an objectionable level. The court never addressed whether an easement was permissible and, to the extent this case might have any bearing on the case at bar, it is clearly distinguishable since plaintiff has used the airspace for numerous years and it is only recently that defendants' trees have reached the "clear zone" established by the F.A.A.[10]

We see no reason why plaintiff cannot obtain an easement in this case. In *Griggs,* which was discussed earlier, the Court concluded that the airport had taken an air easement in private property and, therefore, under a "takings" analysis it had to compensate the owner. If one can obtain an easement so as to be required to compensate another, it stands to reason that an easement is permissible. Defendants argue, however, that they should be compensated under a *Griggs* analysis because this amounts to a taking. The problem with this position, however, is that it fails to recognize that an easement by prescription is obtained by a party once the statute of limitations for bringing an action has run and defendants may have forfeited their rights by sitting on them.

Of course, we note that this is only a motion to dismiss and we have only stated that plaintiff has the right to go forward with its effort to prove it has acquired an easement. Many obstacles may prevent plaintiff's recovery on this claim, such as a lack of continuity if, in fact, the airspace for Runway 11/29 is only used in limited circumstances. Moreover, as was recognized by one court, the easement that plaintiff may have obtained might be different than its proposed use today. *See Petersen v. Port of Seattle,* 94 Wash.2d 479, 618 P.2d 67, 70–71 (1980) (en banc) (while recognizing that avigation easement is permissible, court found that the purported easement was acquired when far less air traffic existed and smaller planes were used); *see also Drennen v. County of Ventura,* 38 Cal.App.3d 84, 112 Cal.Rptr. 907, 909 (1974) (dicta) (easement permissible but not under facts presented). These questions, however, are not presently before us.

Turning to defendants' argument that plaintiff is seeking to obtain an easement in favor of the general public, we find that to the extent plaintiff is seeking to acquire an easement in defendants' private property, plaintiff is seeking that easement for itself and not for the general public, notwithstanding the fact that the airport ultimately serves the general public. Only plaintiff, and airlines using WCA, can utilize such an easement and if the airport goes, so does the easement. This is the distinguishing factor from the cases defendants cite where the purported "public easement" would last forever.[11]

10. While the parties were unable to inform us whether the trees in question had been planted before WCA began its operations some forty years ago, it is uncontroverted that the trees only recently have reached an objectionable level.

11. Similarly, we are not persuaded by defendants' argument that to the extent the purported interest plaintiff is asserting is actually in public property, it is invalid since a private party cannot acquire public property by prescription. If defendants actually believed this, they would never suggest that they can prevent the public

For all the foregoing reasons, defendants' motion to dismiss a claim of an easement by prescription is denied.

## III. CONCLUSION

The Commissioner's motion to dismiss the claims asserted against him is granted. As to the remaining defendants, the claims based on federal law are dismissed, as is any claim based on public nuisance pursuant to Connecticut statutory law. The common law claims of public nuisance and easement by prescription must stand against these defendants.

SO ORDERED.

from entering public airspace by growing their trees to an intrusive height. If the airspace actually is in the public domain, defendants have no right to offer any interference. *See United States v. Brondum*, 272 F.2d 642, 645 (5th Cir.1959) (to the extent a party is seeking protection "for flights in the air as a public highway ... no easement would be necessary"). Unfortunately, however, while the FAA has determined that the trees are within the "navigable airspace" of the United States, which was the reason for the limitations it imposed on Runway 11/29, neither it nor the State of Connecticut has attempted to address this problem.