9 F.3d 242
 COUNTY OF WESTCHESTER, NEW YORK, Plaintiff-Appellee,
v.
COMMISSIONER OF TRANSPORTATION OF the STATE OF CONNECTICUT, Defendant,
Town of Greenwich; Laurelton Nursing Home, Inc.; Greenwich
King Street Associates II, L.P.; Mildred Tomonto;
Convent of the Sacred Heart,
Defendants-Appellants,
Laurel Convalescent Home, Inc., Appellant.
 Nos. 554, 555, 556, 557, 558, Dockets 92-7698, 92-7700,
92-7704, 92-7706, 92-7018, 92-7726.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 18, 1992.
Certification to Connecticut Supreme Court Jan. 6, 1993.
Submitted on Supplemental Briefs after Response of
Connecticut Supreme Court Aug. 27, 1993.
Decided Nov. 10, 1993.
 
 Karl S. Coplan, New York City (Berle, Kass & Case, Eve C. Gartner, Kelley Drye & Warren, John M. Callagy, Cadwalader Wickersham & Taft, William Schwartz, of counsel), for defendant-appellant the Convent of the Sacred Heart.
 Joyce H. Young, Greenwich, CT (John E. Meerbergen, Greenwich Town Atty., of counsel), for defendant-appellant Town of Greenwich.
 Stuart A. McKeever, Westport, CT, for defendants-appellants Laurelton Nursing Home, Inc. and Laurel Convalescent Home, Inc.
 O'Rourke & O'Hanlon, New Canaan, CT (Edward V. O'Hanlon, of counsel), for defendant-appellant Mildred Tomonto.
 Cummings & Lockwood, Stamford, CT (Chase Rogers, Rosalind Kelley, of counsel), for defendant-appellant Greenwich King Street Associates II, L.P.
 Marguerite R. Wiess, White Plains, NY, Asst. County Atty. for Westchester County (Marilyn J. Slaatten, Westchester County Atty., Carol L. Van Scoyoc, Deputy County Atty., of counsel), for plaintiff-appellee County of Westchester.
 Richard Blumenthal, Hartford, CT, Atty. Gen., State of Conn., Cornelius F. Tuohy, Asst. Atty. Gen., for State of Conn., amicus curiae.
 Leonard A. Ceruzzi, Janet V. Lanigan, J.E. Murdock, III, Baker, Worthington, Crossley, Stansberry & Woolf, Washington, DC, for National Business Aircraft Ass'n and the Westchester Aviation Ass'n, amici curiae.
 John S. Yodice, Ronald D. Golden, Raymond C. Speciale, Yodice Associates, Washington, DC, for Aircraft Owners and Pilots Ass'n, amicus curiae.
 William E. Hegarty, Greenwich, CT, John B. Conway, New York, NY, for themselves as amici curiae.
 Before: FEINBERG and KEARSE, Circuit Judges.[1]
 PER CURIAM:
 
 
 1
 Defendants, landowners in the State of Connecticut (landowners), appeal from an order entered in June 1992 in the United States District Court for the Southern District of New York, Gerard L. Goettel, J., granting partial summary judgment to plaintiff County of Westchester (the County) on its claim of a prescriptive avigation easement under Connecticut law. 793 F.Supp. 1195. The appeal comes to us pursuant to 28 U.S.C. Sec. 1292(b), the district court having made the requisite certification in August 1992 and this court having accepted the interlocutory appeal. We heard argument in November 1992, and in January 1993 we certified certain questions of state law to the Connecticut Supreme Court. 986 F.2d 624. Based on the response from that Court, we reverse the district court's order and remand for consideration of the remaining claims.
 
 Background
 A. The Litigation in the District Court
 
 2
 The facts of the case are discussed in great detail in the district court's published opinions, familiarity with which will be assumed. See 745 F.Supp. 951; 756 F.Supp. 154; 793 F.Supp. 1195. We will discuss the facts only briefly here.
 
 
 3
 The Westchester County Airport (the airport), owned and operated by the County, is located in New York State adjacent to the Connecticut border and has been in operation for more than 40 years. 745 F.Supp. at 953. The approach zone to runway 11/29, one of the airport's two runways, is located almost entirely in Connecticut. The tree-studded path underneath the approach zone is owned by defendant landowners. One of the landowners, the Town of Greenwich, is a public entity. The rest are private persons or entities.
 
 
 4
 In 1981, the Federal Aviation Administration (FAA) warned the County that several of the landowners' trees had penetrated the airspace constituting the mandatory "clear zone" for runway 11/29. The clear zone, as distinguished from the flight path, is not airspace through which the airplanes regularly fly, but rather is "a ground level area beyond the runway to be kept clear of vertical structures that could interfere with low-flying aircraft." United States v. City of New Haven, 367 F.Supp. 1338, 1339 n. 2 (D.Conn.1973), aff'd, 496 F.2d 452 (2d Cir.), cert. denied, 419 U.S. 958, 95 S.Ct. 218, 42 L.Ed.2d 174 (1974). Because of concern over the problems posed by the trees, the FAA in February 1989 ordered the runway's usable length shortened by approximately 1300 feet. The effect of this order was to stop the use of the runway for many types of airplanes. 745 F.Supp. at 953. The County offered to trim the trees back at its own expense, but the landowners refused. Id.
 
 
 5
 In February 1990, the County filed this action in the district court seeking, among other things, to force the landowners to have the trees trimmed. The parties agreed that "New York cannot exercise its powers of eminent domain over property located in another state." Id. The parties further agreed that Connecticut law controls under the New York choice of law rule favoring the law of the situs of the real property at issue. Id. at 957 n. 7. In its complaint, the County advanced several theories based on federal law and Connecticut state law. In September 1990, the district court granted in part the landowners' motion to dismiss for failure to state a cause of action under F.R.Civ.P. 12(b)(6), and granted the motion of an additional defendant, the Commissioner of the Connecticut Department of Transportation, to dismiss the complaint against him in its entirety. Id. at 954-57. As a result of these dispositions, the County's only remaining claims were state common law claims including a claim of a prescriptive avigation easement. Id. at 962.
 
 
 6
 The district court addressed the prescriptive avigation easement claim in the opinion that culminated in the June 1992 order now before us. 793 F.Supp. 1195. The district court noted that the County in effect seeks two separate easements: an "avigation or flight easement giving it a right to fly through the airspace above defendant's properties [and] a clearance easement providing it the right to cut down those trees obstructing the approach to runway 11/29 and its clear zones." Id. at 1204; see also United States v. Brondum, 272 F.2d 642, 644-45 (5th Cir.1959) (distinguishing between avigation easements and clearance easements). In its opinion, the district court noted the uncertain status of both types of easements under Connecticut law. Nonetheless, the court concluded that "recognition of a prescriptive avigation easement is the proper course." 793 F.Supp. at 1205.
 
 
 7
 The district court applied the general requirements for acquiring prescriptive easements under Connecticut law and granted the County's motion for summary judgment on the prescriptive avigation easement claim. Id. at 1213. Noting that "[u]nder Connecticut law, the 'owner of an easement has all rights incident or necessary to its proper enjoyment,' " id. (quoting Kuras v. Kope, 205 Conn. 332, 341, 533 A.2d 1202 (1987)), the district court further concluded that "[b]y virtue of its acquisition of an avigation easement, the County also obtained ... a right to unobstructed clear zones." Id. With respect to the dimensions of the easements, the district court assumed that "while not generally bound to enforce the FAA clear zones or to defer to the FAA's institutional expertise in the area of air safety, Connecticut would agree that the clear zones necessary for safe air operations are those identified in the FAA regulations." Id. 793 F.Supp. at 1217.
 
 
 8
 The district court then granted the landowners a partial offset based on counter-easements they had acquired by virtue of the encroachment of their trees into the clear zone since approximately 1975, id. at 1219, and the court appointed a special master to evaluate which trees should be trimmed and removed. Id. at 1222.
 
 
 9
 B. Certification to the Connecticut Supreme Court
 
 
 10
 In its Sec. 1292(b) certification to us, the district court formulated the controlling question of law as: "whether the state of Connecticut recognizes avigation easements acquired by prescription and, if so, whether it would include a clearance easement and what its dimensions would be." Noting the absence of controlling precedent in Connecticut on the issues presented and the potential effect a decision might have on the property rights of Connecticut residents, we agreed with the suggestion of amicus Attorney General of the State of Connecticut that the questions of state law referred to above should in turn be certified to the Connecticut Supreme Court. Certification to that court respects Connecticut's strong interest in deciding those questions "rather than having the only precedent on point be that of the federal court, which may be mistaken." Home Ins. Co. v. American Home Prods. Corp., 873 F.2d 520, 522 (2d Cir.1989).
 
 
 11
 By order dated January 6, 1993, we certified the following questions of law to the Connecticut Supreme Court:
 
 
 12
 1. Can an avigation easement be acquired by prescription in the State of Connecticut?
 
 
 13
 2. If under Connecticut law a clearance easement is distinct from an avigation easement, can a clearance easement be acquired by prescription in the State of Connecticut?
 
 
 14
 3. Whether conceived as incident to an avigation easement or as constituting a separate clearance easement, would a clear zone include whatever air space is necessary to use the easement? See 986 F.2d at 627.
 
 
 15
 The Connecticut Supreme Court accepted certification, and heard oral argument in April 1993. In a decision released July 28, 1993, the Connecticut Supreme Court responded to the certification. 227 Conn. 495, 629 A.2d 1084 (1993).
 
 Discussion
 
 16
 A. The decision of the Connecticut Supreme Court
 
 
 17
 We receive the Connecticut Supreme Court's response to our certification bearing in mind that the highest court of a state "has the final word on the meaning of state law." Deeper Life Christian Fellowship, Inc. v. Sobol, 948 F.2d 79, 84 (2d Cir.1991). Thus, we are obligated to apply Connecticut law as determined by the Connecticut Supreme Court. Cf. Home Ins. Co. v. American Home Products Corp., 902 F.2d 1111, 1113 (2d Cir.1990).
 
 
 18
 The Connecticut Supreme Court acknowledged, as had the district court, that "the issue of whether an avigation easement may be acquired by prescription is one of first impression in [Connecticut]." 227 Conn. at 501-02, 629 A.2d 1084. However, the Court declined to answer that question, stating that: "Because we conclude that the plaintiff did not acquire a prescriptive avigation easement in the circumstances presented, we need not decide whether an avigation easement may ever be acquired by prescription in this state." Id. at 502, 629 A.2d 1084.
 
 
 19
 First, the Connecticut Supreme Court made clear that "[p]rescriptive easements are recognized in [Connecticut]." Id. at 501, 629 A.2d 1084 (citing Connecticut General Statutes Sec. 47-37; Klar Crest Realty, Inc. v. Rajon Realty Corp., 190 Conn. 163, 459 A.2d 1021 (1983)). The Court then enumerated the conditions for obtaining a prescriptive easement emphasizing that, under Connecticut law, " '[t]o establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised.' " Id. (citing Whiting v. Gaylord, 66 Conn. 337, 344, 34 A. 85 (1895)). In addition, "the party claiming to have acquired an easement by prescription must demonstrate that the use of the property has been 'open, visible, continuous and uninterrupted for fifteen years and made under a claim of right.' " Id. (citations omitted). The Court further noted that "Connecticut law refrains from extinguishing or impairing property rights by prescription unless the party claiming to have acquired an easement by prescription has met each of these stringent conditions." Id.
 
 
 20
 The Connecticut Supreme Court decided that the County could not have obtained a prescriptive avigation easement "in these circumstances" as a matter of law because the County's use of the flight and clearance zones was not adverse. The Court held that the landowners "had no right of action against the plaintiff to stop the overflights because federal law prohibits landowners from obtaining injunctive relief against aircraft using the navigable airspace of the United States." Id. 227 Conn. at 502-03, 629 A.2d 1084 (citing City of New Haven, 367 F.Supp. at 1341; Town of East Haven v. Eastern Airlines, Inc., 331 F.Supp. 16 (D.Conn.1971), aff'd, 470 F.2d 148 (2d Cir.1972), cert. denied, 411 U.S. 965, 93 S.Ct. 2144, 36 L.Ed.2d 685 (1973)). The Court noted that federal authorization provides additional grounds for finding that the County's use was not adverse. Id. 227 Conn. at 503 n. 12, 629 A.2d 1084. The Court concluded that "[i]n these circumstances, the defendants could not have reclaimed the exclusive use of the airspace above their properties and, therefore, the use of that airspace by the plaintiff can not be considered adverse." Id. at 503, 629 A.2d 1084.
 
 
 21
 The Connecticut Supreme Court also considered the argument that the County's use was adverse because of defendants' right to bring a takings claim pursuant to the Fifth and Fourteenth Amendments to the United States Constitution under the theory of United States v. Causby, 328 U.S. 256, 266, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946) (recognizing a compensable taking for flights "so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land") and Griggs v. Allegheny, 369 U.S. 84, 88-89, 82 S.Ct. 531, 533, 7 L.Ed.2d 585 (1962). The Connecticut Court rejected this argument too. The Court noted: "Although we doubt that we would ever require a landowner to assert a constitutional takings claim in order to avoid the acquisition of a prescriptive avigation easement, we are satisfied that these defendants were not obliged to do so." Id. Thus, the Connecticut Supreme Court held that, under Connecticut law, the County could not have obtained a prescriptive avigation easement.
 
 B. The County's challenges
 
 22
 Upon receipt of the response of the Connecticut Supreme Court to our certification, we asked the parties for supplemental briefs addressed to that response. Not surprisingly, the County has asked us to reject the decision of the Connecticut Court. The County argues that the Court did not respond to the questions certified and that the Court improperly based its decision on independent findings of fact. Putting to one side the question whether we could reject the Connecticut Court's response--the County cites no case where that has occurred--we see no persuasive reason why we should do so. It is true that the Court did not answer precisely the first question we certified, i.e., the general question of whether an avigation easement can be acquired by prescription under Connecticut law. Nonetheless, the Court did answer a material subset of that question, i.e., whether an avigation easement can be acquired under Connecticut law in these circumstances. We believe that the Connecticut Supreme Court's decision is dispositive, both as responsive to our certification and also, under Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), as a controlling statement of state law regarding a common law claim.
 
 
 23
 The County asserts that "the Connecticut Supreme Court has disregarded the mandate of this Court, and usurped the jurisdiction of this Court by presuming to decide an ultimate question of fact which is the sole prerogative of this Court." We think the County mischaracterizes the Connecticut Supreme Court's opinion. To the contrary, the Court applied Connecticut's adverse use requirement to the record supplied by the district court and determined that the County could not, as a matter of Connecticut law, have acquired a prescriptive avigation easement.
 
 
 24
 It is true that to the extent that the Connecticut Supreme Court's opinion was based on federal law we would not be bound by it. It is also true that the Connecticut Court's ruling that the landowners could not obtain injunctive relief against the overflights was based upon federal law. But, the County agrees with that assertion. What the County disagrees with is the view of the Connecticut Court that since the landowners "could not have reclaimed the exclusive use of the airspace above their properties ... the use of that airspace by the [County] can not be considered adverse." 227 Conn. at 503, 629 A.2d 1084. The County argues vigorously that this proposition is incorrect. But, the proposition, whether or not one endorses it, is a statement of Connecticut law that we are required to accept.
 
 
 25
 Similarly, the Connecticut Supreme Court's conclusion that the possibility of a constitutional takings claim by the landowners did not satisfy Connecticut's adverse use requirement is also a binding statement of state law. The Connecticut Court strongly suggested that it would not "ever require a landowner to assert a constitutional takings claim in order to avoid the acquisition of a prescriptive avigation easement," and squarely held that on the record before it defendant landowners "were not obliged to do so." Id. at 504, 629 A.2d 1084. These also are statements as to what constitutes sufficient adverse use under Connecticut state law.
 
 
 26
 Therefore, we are bound by the decision of the Connecticut Supreme Court that the County could not as a matter of Connecticut law acquire a prescriptive avigation easement on the facts of this case. The district court's June 2, 1993 grant of partial summary judgment to the County on its prescriptive easement claim is reversed. The district court is directed to enter judgment for the landowners on that claim, and the case is remanded for further proceedings consistent with this opinion. Such remand is without prejudice to determination of the remaining claims and to the right of any party after final judgment to appeal all issues not decided by us in this opinion.
 
 
 
 [1]
 The Honorable Robert F. Peckham, Senior United States District Judge for the Northern District of California, who was sitting by designation at the time of oral argument, passed away on February 16, 1993. The County of Westchester has filed a motion seeking to reconstitute the panel with a third judge, arguing that "additional delay, in the event of the inability of a two judge panel to reach a decision, is unnecessary and should be avoided." However, the remaining members of the panel agree on the disposition of this appeal, and the local rules of this Circuit permit us to issue an opinion without replacing Judge Peckham. Local Rule Sec. 0.14(b). Therefore we deny the County's motion to reconstitute the panel