COUNTY OF
WESTCHESTER, Plaintiff,

v.

TOWN OF GREENWICH, CONNECTI-CUT, Commissioner of Transportation of the State of Connecticut, Laurelton Nursing Home, Inc., Greenwich King Street Associates II, L.P., the Convent of the Sacred Heart, and Mildred To-monto, Defendants.

No. 90 Civ. 1302 (GLG).

United States District Court,
S.D. New York.

Feb. 12, 1991.

Marilyn J. Slaaten, Westchester County Atty., White Plains, N.Y. (Michael D. Die-derich, Jr., Asst. County Atty., of counsel), for plaintiff.

John E. Meerbergen, Town Atty., Greenwich, Conn. (Joyce H. Young, Asst. Town Atty., of counsel), for defendant Town of Greenwich, Conn.

Stuart A. McKeever, Westport, Conn. (Stuart A. McKeever, of counsel), for defendant Laurelton Nursing Home, Inc.

Cummings & Lockwood, Stamford, Conn. (Chase T. Rodgers, of counsel), for defendant Greenwich King Street Associates II, L.P.

Badger, Fisher & Cohen, Greenwich, Conn. (Miles F. McDonald, Jr., of counsel), Berle, Kass & Case, New York City (Charles S. Warren, Carl S. Coplan, of counsel), for defendant The Convent of the Sacred Heart.

Sive, Paget & Riesel, New York City (David Sive, of counsel), for defendant Mildred Tomonto.

## OPINION

GOETTEL, District Judge.

The background of this litigation is set forth in an earlier opinion, see 745 F.Supp. 951 (S.D.N.Y.1990), and will not be repeated in detail here. In essence, plaintiff owns and operates the Westchester County Airport in New York and defendants, who are all Connecticut residents, own parcels of land adjacent, or at least in close proximity, to the New York border. The airport has two runways, one of which is used predominantly on an emergency basis. In February 1989, however, the Federal Aviation Administration ("FAA") ordered a reduction in the available length of this secondary runway. The rationale offered by the FAA was that the height of the trees owned by defendants, and located on defendants' property, made it unsafe for planes to utilize the full length of this runway. As a result, the runway is now too short for many aircraft utilizing the airport.

In February 1990, plaintiff instituted this action against the defendant property owners, as well as the Commissioner of Transportation of the State of Connecticut. On September 10, 1990, we dismissed all claims asserted against the Commissioner. As to the other defendants, we dismissed claims based on the commerce clause of the Constitution, the Federal Aviation Act, and Connecticut's statutory law of public nuisance. The only claims left standing were those based on theories of easement by prescription and common law public nuisance. Thereafter, defendants filed their answers, which included counterclaims for inverse condemnation pursuant to the "takings" clause of the fifth amendment as it is applied to the states pursuant to the fourteenth amendment. In addition, defendant Laurelton Nursing Home, Inc. asserted a counterclaim for permanent injunction.

■ Plaintiff now moves to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's argument can be summarized as follows. Since plaintiff is located in New York and the intruding trees are located in Connecticut and owned by Connecticut residents, it has no powers of eminent domain over these trees. This point is not disputed. Therefore, plaintiff contends, since it cannot affirmatively condemn the property, it is unable to unconstitutionally take the property and, consequently, cannot inversely condemn the property either. See Gregory v. City of New York, 346 F.Supp. 140, 143 (S.D.N.Y.1972). Recognizing, however, that pervasive regulation can also amount to a taking, see First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 316, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250 (1987), plaintiff adds that it has no regulatory powers over defendants' property either. Thus, plaintiff suggests, it should be treated no differently than any private party asserting claims of easement by prescription or public nuisance.

In response, defendants point to the specific language of the fifth amendment, which states that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. Since their trees are private property and the airport is used by the public, defendants contend that the takings clause is implicated and plaintiff must compensate them regardless of the fact that it cannot condemn the trees by eminent domain. See Fountain v. Metropolitan Atlanta Rapid Transit Auth., 678 F.2d 1038, 1043 (11th Cir.1982). In addition, defendants point to the Supreme Court's decisions in Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct.

531, 7 L.Ed.2d 585 (1962), and *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), which establish constitutional bases for property owners to assert takings claims based on flights above their property. Finally, defendants contend that even if a party who has created a nuisance is not enjoined from its activities because of competing public interests, the injured property owners may still be entitled to damages resulting from the nuisance under the theory that equitable servitudes on their properties have been created. *See Boomer v. Atlantic Cement Co.*, 26 N.Y.2d 219, 309 N.Y.S.2d 312, 319, 257 N.E.2d 870, 874 (1970).

The typical situation in which the takings clause is implicated is when "the government acts to condemn property in the exercise of its power of eminent domain." *First English*, 482 U.S. at 316, 107 S.Ct. at 2386. Nonetheless, while we do not believe that the cases defendants cite go as far as they would like, we will assume for these purposes that plaintiff's inability to condemn defendants' property by eminent domain does not prevent defendants from asserting a claim for inverse condemnation.

Inverse condemnation has been recognized in instances when pervasive regulation has been enacted by the government, *id.*, or when continuous invasions of one's airspace affect the use of the land itself. *Causby*, 328 U.S. at 265, 66 S.Ct. at 1067. The common element in all such cases, however, is some governmental action creating an interference with a property owner's rights. For example, when government regulations amount to a taking, the government is simply saying that because it is the government it has the right to pass regulations that interfere with another's property rights. Similarly, when the government permits an airport to be built and operated in such a way as to interfere with private property rights, the authority for its action is the fact that it is the government and it has the right to develop airports. In the case at bar, however, a far different situation exists.

Plaintiff is not suggesting that it has the right to trim or remove defendants' trees simply because it is the government. In fact, the only reason this suit had to be brought is precisely because plaintiff lacks governmental power to condemn property in another state. Rather, in light of our earlier decision, plaintiff can only interfere with defendants' ability to grow their trees if it can establish an easement by prescription or a public nuisance. If plaintiff prevails on its easement by prescription claim, it will be because it has proven the necessary elements of the cause of action and has established its ownership of the right to travel in defendants' airspace. If plaintiff owns this right, it is not taking anyone's property by asserting it.[1] Likewise, if plaintiff prevails on its public nuisance claim, it will not be taking defendants' property, but instead, will be abating a nuisance by preventing defendants from using their land in a manner that is "unreasonable" and creates a dangerous condition. *See Connecticut v. Tippetts–Abbett–McCarthy–Stratton*, 204 Conn. 177, 527 A.2d 688, 692 (1987). It would be alarming to suggest that a takings claim could be established any time a party, whether private or governmental, sought to abate a public nuisance.[2] Therefore, unlike a situation where a property owner can no longer use his or her property as desired because of governmental intrusion, if defendants lose it will be because they do not have any ownership rights in the particular tract of airspace or because their use is dangerous and unreasonable. Defendants would have no right to compensation in either event, although at this stage we do not foreclose the possibility that plaintiff would be required to pay the actual cost of trimming

---

1. As we noted in our earlier decision, "an easement by prescription is obtained by a party once the statute of limitations for bringing an action has run and defendants may have forfeited their rights by sitting on them." 745 F.Supp. at 961.

2. Nonetheless, as we pointed out at oral argument, because of the strict requirements for establishing a public nuisance, we view plaintiff's chances of prevailing on this claim to be quite remote.

or removing the trees.[3]

Defendants' argument that an equitable servitude has been placed on their property is similarly unavailing. Defendants cite *Boomer v. Atlantic Cement Co.*, 26 N.Y.2d 219, 309 N.Y.S.2d 312, 257 N.E.2d 870 (1970), for this proposition. In *Boomer*, the defendant operated a cement plant that emitted dirt, smoke, and noise, which caused injury to the plaintiff's property. The court found a nuisance to have existed, but concluded that the issuance of an injunction would constitute too drastic a remedy in light of the parties' competing interests. Instead, the court assessed damages against the defendant under the theory that a servitude on the plaintiff's land had been imposed by the defendant's nuisance. *Id.* at 228, 309 N.Y.S.2d at 319, 257 N.E.2d at 874. In the case at bar, however, defendants have not asserted a nuisance claim against plaintiff. In fact, plaintiff's own nuisance cause of action suggests that it is the defendants who have created a nuisance by unreasonably allowing their trees to interfere with the FAA's "clear zone." If defendants' actions are found to be unreasonable, the equities would never balance in their favor and there would be no cause for compelling plaintiff to compensate them.

■ One additional argument on the theory of inverse condemnation is asserted by defendant Greenwich King Street Associates II, L.P. It suggests that Connecticut statutory law, which permits a municipality to acquire easements to provide airports with unobstructed airspace, Conn.Gen.Stat. Ann. § 15–73 (West 1988), also applies to out-of-state municipalities. Defendant argues that it would be ironic if a Connecticut municipality would be required to pay its property owners for an easement, but an out-of-state municipality taking the

same property would not have to do so.[4] However, when plaintiff tried to assert a claim against defendants under this same statute, which also declares encroachments to airports to be public nuisances, we found the statute inapplicable because the airport was located in New York. A different result cannot possibly be required now that the property owners are making the claims.

■ We now turn to the additional counterclaim for a permanent injunction asserted by defendant Laurelton Nursing Home, Inc. ("Laurelton"). The counterclaim states that the vibrations, fumes, and noises from overhead aircraft interfere with Laurelton's "peaceful enjoyment and use of [its] property." Answer of Defendant Laurelton ¶ 38. Moreover, Laurelton claims that its residents are entitled to equal protection and the ninth amendment's unenumerated rights, whatever they might be. Finally, Laurelton suggests that plaintiff "has an affirmative duty to prevent the discomfort of mind and body caused by flights penetrating the airspace" above its property. Answer of Defendant Laurelton ¶ 40. While all this is interesting, and actually may be true, it does not "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). There simply is no specific legal theory enunciated which might form the basis for the grant of an injunction. If this is actually a claim that plaintiff's planes create a public nuisance, the allegations made are wholly inadequate. Therefore, the counterclaim must be dismissed, but as to this counterclaim alone, Laurelton will be afforded twenty days leave to replead.

For all the foregoing reasons, all counterclaims asserted by all defendants are dismissed. Defendant Laurelton has twen-

3. Plaintiff's complaint is ambiguous with respect to whether it seeks to remove the trees or merely trim them. At oral argument, we were informed by counsel that plaintiff actually is making a hybrid demand, seeking to trim some trees while removing others. This demand, we are informed, is necessitated by the topography of defendants' property. Nonetheless, whether trimming or removal is plaintiff's ultimate objective, our analysis need not change.

4. In fact, in our earlier opinion we recognized this incongruity and stated that plaintiff suggested that an inverse condemnation counterclaim was the appropriate vehicle for asserting a takings claim. 745 F.Supp. at 954 n. 4. The claim having now been asserted, defendants contend that it should not be dismissed. Our recognition of the anomalous situation and of plaintiff's suggestion, however, was by no means an endorsement of the merit of defendants' claim.

ty days to replead its counterclaim for a permanent injunction.

SO ORDERED.