**COUNTY OF WESTCHESTER, NEW YORK, Plaintiff–Appellee,**

v.

**COMMISSIONER OF TRANSPORTATION OF the STATE OF CONNECTICUT, Defendant,**

**Town of Greenwich; Laurelton Nursing Home, Inc.; Greenwich King Street Associates II, L.P.; Mildred Tomonto; The Convent of the Sacred Heart, Defendants–Appellants,**

**Laurel Convalescent Home, Inc., Appellant.**

**Docket Nos. 92–7698, 92–7700, 92–7704, 92–7706 and 92–7726.**

United States Court of Appeals, Second Circuit.

Jan. 6, 1993.

Before: FEINBERG, KEARSE, Circuit Judges, and PECKHAM,* District Judge.

### ORDER

On consideration of the brief and record (including the amicus curiae brief of the Attorney General of the State of Connecticut, requesting the certification ordered herewith) and the oral argument in this appeal, it is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the Connecticut Supreme Court a Certificate in the form attached, together with a complete set of the briefs, appendix and record filed by the parties with this court. The parties are hereby ordered to bear the cost equally of such fees and costs, if any,

* Honorable Robert F. Peckham, Senior United States District Judge for the Northern District of

as may be requested by the Connecticut Supreme Court.

### APPENDIX
### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

Docket Nos. 92–7698, 92–7700, 92–7704,

92–7706, 92–7726

Filed January 6, 1993

COUNTY OF WESTCHESTER, NEW YORK,

Plaintiff–Appellee,

—against—

COMMISSIONER OF TRANSPORTATION OF THE

STATE OF CONNECTICUT,

Defendant,

TOWN OF GREENWICH; LAURELTON NURSING HOME, INC.; GREENWICH KING STREET ASSOCIATES II, L.P.; MILDRED TOMONTO; THE CONVENT OF THE SACRED HEART,

Defendants–Appellants,

LAUREL CONVALESCENT HOME, INC.,

Appellant.

Certificate to The Connecticut Supreme Court (pursuant to Conn.Gen.Stat. § 51–199a— Uniform Certification of Questions of Law Act)

The Westchester County Airport (the airport), owned and operated by the County of Westchester (the County), is located in New York adjacent to the border between New York and Connecticut and has been in operation for more than 40 years. The airport presently uses two runways. One of these runways, runway 11/29 (the run-

California, sitting by designation.

way), abuts New York's border with Connecticut. The approach zone to the runway is located almost entirely in Connecticut. The tree-studded land underneath the approach zone is owned by the defendant landowners (landowners). One of the landowners, the Town of Greenwich, is a public entity. The rest are private persons or entities.

The Federal Aviation Administration (FAA) requires the airport, like all airports, to keep the approach zone free of obstructions. Over the years, however, several of the landowners' trees have penetrated into the airspace constituting the approach zone. The FAA voiced concern about the trees in 1981, warning that unless they were removed the threshold (the end of the runway) would have to be shortened so that aircraft would not risk hitting the encroaching trees when landing or taking off. Eventually, the FAA ordered the runway's threshold displaced. Completed in early 1989, the displacement shortened the runway's usable length by some 1300 feet.

The airport offered to trim the trees back at the County's expense, but the landowners refused. In February 1990, the airport filed this action in the United States District Court for the Southern District of New York. All parties agreed that "New York cannot exercise its powers of eminent domain over property located in another state." 745 F.Supp. 951, 953. Consequently, the airport advanced several theories based on Connecticut state law, principally that the airport had acquired a prescriptive easement entitling it to use and maintain the airspace it needed to keep the runway fully operational.

The parties filed motions for summary judgment, and the district court, Gerard L. Goettel, J., issued an opinion on June 2, 1992. 793 F.Supp. 1195. As an initial matter, the district court's analysis divided the airport's claimed easement into two distinct easements; namely, "an avigation or flight easement giving [the airport] a right to fly

through the airspace above the [landowners'] properties" and "a clearance easement providing [the airport] the right to cut down those trees obstructing the approach to runway 11/29 and its clear zones." *Id.* at 1204.

As the district court recognized, the status of these easements is uncertain under Connecticut law. Nonetheless, the district court was "persuaded that recognition of a prescriptive avigation easement is the proper course" and "that clearance easements ... [also] can be acquired by prescription." *Id.* at 1205, 1207. Having established the availability of avigation and clearance easements, the district court next found that the airport had in fact satisfied all the requirements necessary to acquire those easements. According to the district court, one of the rights incident to the airport's avigation easement was a right to unobstructed "clear zones." *Id.* at 1213. A clear zone consists of a buffer of airspace surrounding the approach path to the runway and acts to safeguard the clear passage of arriving and departing aircraft. The district court reasoned that the dimensions of this zone were coextensive with those established by FAA regulations. *Id.* at 1217.

The airport's victory was not complete, however. The district court also found that the landowners had acquired prescriptive *counter*-easements by the growth of their trees into the clear zone, though the court rejected the landowners' claim of counter-easement into the glide path airspace itself. Taking this counter-easement into account, the court offset the extent of the airport's easement by the landowners' counter-easement. *Id.* at 1219.[1] Finally, the district court rejected the landowners' laches defense.

After the landowners filed notices of appeal, they petitioned the district court to amend its June 2, 1992 opinion to include a certification pursuant to 28 U.S.C. § 1292(b). The district court granted the

---

1. According to the district court, the landowners' trees became adverse to the airport's prescriptive right in the clear zone the moment they penetrated that zone. Using a 15–year prescriptive period under Connecticut law, the district court reasoned that by filing suit in February 1990 the airport effectively limited the extent of the landowners' prescriptive counter-easement to the airspace the trees occupied as of February 1975. *Id.* at 1219.

motion, stating that its June 2 opinion "involve[d] a controlling question of law as to which there is a substantial ground for difference of opinion." The district court formulated the question as follows: "[W]hether the state of Connecticut recognizes avigation easements acquired by prescription and, if so, whether it would include a clearance easement and what its dimensions would be." The landowners petitioned for permission to appeal pursuant to § 1292(b). We granted the petition and accepted the appeal on the basis of § 1292(b).

We are aware that the district court spent considerable time and energy carefully analyzing the novel and complex issues this case presents, and that the parties wish this controversy to come to a close, each side believing it has the stronger case on the merits. Nevertheless, the Attorney General of Connecticut, appearing before us as amicus curiae on behalf of the State of Connecticut, correctly observes that this case involves unsettled and significant questions of Connecticut property law. The Attorney General therefore asks that we certify the relevant questions to the Connecticut Supreme Court. We think this is prudent counsel.

The questions of law that should be decided by the Connecticut Supreme Court are as follows:

1. Can an avigation easement be acquired by prescription in the State of Connecticut?

2. If under Connecticut law a clearance easement is distinct from an avigation easement, can a clearance easement be acquired by prescription in the State of Connecticut?

3. Whether conceived as incident to an avigation easement or as constituting a separate clearance easement, would a clear zone include whatever air space is necessary to use the easement?

These difficult questions implicate the authority of the State of Connecticut to declare whether a particular set of property rights will be recognized within the state. These are questions of first impression under Connecticut law. Indeed, there appears to be little law anywhere directly addressing the particular rights at issue here. The district court cited only three cases involving prescriptive avigation easements, and these indicate that no single position has commanded universal assent. Compare *Petersen v. Port of Seattle*, [94 Wash.2d 479], 618 P.2d 67, 70–71 (Wash. 1980) (in banc) (implicitly acknowledging prescriptive avigation easement); *Drennen v. County of Ventura*, [38 Cal.App.3d 84], 112 Cal.Rptr. 907, 909 n. 2 (Ct.App.1974) (seeing "no reason why an avigation easement may not be acquired by prescription" but "not decid[ing] the point") with *Sticklen v. Kittle*, [168 W.Va. 147], 287 S.E.2d 148, 155 (W.Va.1981) (refusing to recognize prescriptive avigation easement).

There appear to be no controlling precedents in Connecticut on the issues presented here. These issues affect the property interests of Connecticut residents. The Connecticut Supreme Court is in a better position than are the federal courts to adjudicate these issues of Connecticut law. Certification respects Connecticut's strong interest in deciding the above questions "rather than having the only precedent on point be that of a federal court, which may be mistaken." *Home Ins. Co. v. American Home Prods. Corp.*, 873 F.2d 520, 522 (2d Cir.1989). Resolution by the Connecticut Supreme Court of the certified issues would aid in the administration of justice.

The foregoing is hereby certified to the Supreme Court of Connecticut pursuant to Conn.Gen.Stat. § 51–199a as ordered by the United States Court of Appeals for the Second Circuit.

/s/ ELAINE B. GOLDSMITH
ELAINE B. GOLDSMITH,
Clerk
United States Court of Appeals
for the Second Circuit
by: Carolyn Claire Campbell
Chief Deputy Clerk

Dated: New York, New York
January ___, 1993