**COUNTY OF WESTCHESTER, Plaintiff,**

*v.*

**TOWN OF GREENWICH, CONNECTICUT, Commissioner of Transportation of the State of Connecticut, Laurelton Nursing Home, Inc., Greenwich King Street Associates II, L.P., The Convent of the Sacred Heart, and Mildred Tomonto, Defendants.**

No. 90 Civ. 1302 (GLG).

United States District Court,
S.D. New York.

Nov. 30, 1994.

Marilyn J. Slaatten, Westchester County Atty., White Plains, NY (Katherine M. Knight, Deputy County Atty., Barbara F. Kukowski, Sr. Asst. County Atty., of counsel), for plaintiff.

Berle, Kass & Case, New York City (Karl S. Coplan, of counsel), for defendant Convent of the Sacred Heart.

John E. Meerbergen, Town Atty., Law Dept., Greenwich, CT (Joyce H. Young, of counsel), for defendant Town of Greenwich.

Stuart A. McKeever, Westport, CT, for defendant Laurelton Nursing Home, Inc.

Cummings & Lockwood, Stamford, CT (Chase T. Rogers, Rosalind K. Kelley, of counsel), for defendant Greenwich King Street Assocs. II, L.P.

**498**

O'Rourke & O'Hanlan, New Canaan, CT (Edward V. O'Hanlan, of counsel), for defendant Mildred Tomonto.

## OPINION

GOETTEL, District Judge:

This opinion concerns the final outstanding issue in the County of Westchester's long legal effort to cut back its Connecticut neighbors' trees, which have hampered the use of the Westchester County Airport. At this point, we imagine plaintiff sympathizes with the sentiments expressed in Alan Dugan's poem "A Sawyer's Rage Against Trees Noble As Horses." [1] Currently before us are motions by all parties for summary judgment on plaintiff's claim of public nuisance.

## I. FACTS

The factual background of the instant dispute was fully described in our 1992 opinion concerning this case. *See County of Westchester v. Town of Greenwich,* 793 F.Supp. 1195 (S.D.N.Y.1992); *see also* 756 F.Supp. 154 (S.D.N.Y.1991); 745 F.Supp. 951 (S.D.N.Y.1990). We will, however, set forth the facts relevant to this opinion.

Plaintiff, the County of Westchester, owns and operates the Westchester County Airport ("WCA"), which is located in New York, directly adjacent to Connecticut. The WCA was built in 1942–43 by the United States Army Corp of Engineers for use by the military, and was turned over to the County at the end of World War II. Runway 11/29,[2] an approximately east/west landing strip, is one of two runways at the WCA. The eastern end of Runway 11/29 is only some three hundred feet from the Connecticut state line.

Consequently, airplanes landing on Runway 11/29 from the east, or taking off in that direction, must pass directly over Connecticut property at low altitudes.

Runway 11/29, at full length, is 4,450 feet long. The other runway at the WCA, number 16/34, is 6,550 feet long, and is oriented in an approximately north-south direction. Naturally, the longer Runway 16/34 is the WCA's principal runway. Runway 11/29 is most commonly used by smaller aircraft, although in the past it was used by aircraft as large as the Gulfstream II, a twin-engined corporate jet. Runway 11/29 is sometimes referred to as the "cross-wind runway." As the name implies, Runway 11/29 gives the WCA's air traffic controllers additional options for landings and take offs, since it is oriented at a fifty degree angle to the main landing strip.

Regulations promulgated by the Federal Aviation Administration ("FAA") establish standards defining obstructions to air navigation. *See* 14 C.F.R. Part 77, Subpart C. Any object that penetrates certain imaginary zones, called clear zones, is declared an obstruction to air navigation. 14 C.F.R. § 77.23(a). The clear zones that are important in this dispute are defined by the approach and transitional surfaces, which rise from the end of runways into the adjacent airspace. *See* 14 C.F.R. § 77.25(d), (e).

The immediate cause of the instant dispute was the FAA's October 1988 order that Runway 11/29 be shortened by approximately 1,350 feet because trees located on defendants' property were obstructing the runway's clear zones. This order did not, naturally, come out of the clear blue sky. In fact,

---

**1.**

. . . . .

2.
It is even, the way the trees,
in coming up from the ground,
from nothing, from a nut,
take liberties in spreading out
like animals, like us. But, brutes
of a chosen ground, they stand
around in suction, dark, grouped
like witnesses afraid to act
beside the accidents of roads
and more afraid to cross except
packed in a squirrel's cheek,
in nuts, or in a fairy's flight

of seed. Their undersides are dark
in contrast to the strong, blond,
human inner arm; even the ground
beneath them is a hairy damp,
dirty as groins. Oh we will cut
them down to boards, pulp, dust,
and size: fury the ax, fury the saw
will cure their spreading stands;
courage will make the world plain.

**2.** The runways are numbered according to their reciprocal compass headings, expressed in tenths: e.g. 11/29 is headed 110 degrees in one direction and 290 degrees going in the opposite direction.

the FAA complained about defendants' trees obstructing Runway 11/29's clear zones in 1983, and possibly as early as 1969, although this is in dispute. In 1984, the FAA required the County to issue a Notice to Airmen warning pilots of tree obstructions on Runway 11/29 and advising them to use an angle of descent of nine degrees, instead of the normal three degrees.

Plaintiff acknowledges that there were problems with defendants' trees well before the FAA took action. Plaintiff's affiant, James Hughes, a pilot and military flight instructor who has flown at the WCA since 1949, states that from 1969 to 1976, he observed a considerable lessening of the distance between the treetops and the landing gear of the aircraft he flew. Other pilots' affidavits supplied by plaintiff state that in the mid to late 1970s, trees along the approach to Runway 11/29 began to force pilots to use a higher, steeper approach than normal.

Defendants, pointing to official United States Government Obstruction Charts for 1949, 1963, and 1970, argue that their trees have obstructed Runway 11/29's clear zones since at least 1949, thus implying that the WCA has had notice of a tree problem since it took control of the airport. Plaintiff counters that the obstruction surveys prior to 1982 showed only sporadic and insignificant intrusions by defendants' trees into Runway 11/29's clear zones.

Plaintiff maintains that the FAA's shortening of Runway 11/29 has decreased its usefulness, causing increased traffic on the WCA's principal runway, reduced ability to support practice and training, decreased ability to accommodate emergency situations, decreased cross-wind landing alternatives, and, in adverse conditions, the need to divert air traffic to other regional airports. Plaintiff also argues that the shortening of Runway 11/29 has increased the hazards of using the runway, and has been a contributing factor in several crashes of small aircraft (which defendants deny). Finally, plaintiff notes that defendants' trees are continuing to grow, so that further shortening of Runway 11/29 is inevitable.

Defendants deny that the shortening of Runway 11/29 has increased the hazards for aircraft using the WCA, since, with the shortening of the runway, it now meets FAA requirements for clearance of the approach zone. They also note that the WCA's scheduled commercial flights have not been cut back, although they acknowledge that this may happen if the runway is shortened again.

If defendants' property were within the boundaries of New York State, the WCA would presumably be able to cut back defendants' trees through the state's power of eminent domain. However, since the defendants' property is in Connecticut, this option is not available to the WCA. *See County of Westchester v. Town of Greenwich,* 745 F.Supp. 951, 953 (S.D.N.Y.1990). Moreover, defendants have rebuffed the WCA's offers to trim their trees at its own expense, which the WCA made in 1989 and 1990.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action in February, 1990. In an opinion dated September 10, 1990, we granted a motion by then-defendant the Connecticut Commissioner of Transportation to dismiss the claims against him, and also dismissed plaintiff's claims based on public nuisance pursuant to Connecticut statutory law, and plaintiff's claims under the Commerce Clause and the Federal Aviation Act. *See* 745 F.Supp. 951. We denied defendants' motion to dismiss as to plaintiff's common law claims of public nuisance and easement by prescription. *Id.*

In an opinion dated February 12, 1991, we granted plaintiff's motion to dismiss defendants' counterclaims, which were based on theories of inverse condemnation and equitable servitude, among others. *See* 756 F.Supp. 154.

On June 2, 1992, we granted partial summary judgment for plaintiff, finding that it had acquired prescriptive easements to the airspace above defendants' properties (specifically, an avigation, or air navigation, easement, and a clearance easement). *See* 793 F.Supp. 1195. We granted plaintiff "a limited injunction to cut back, at its own expense, the trees occupying runway 11/29's clear

zones to the heights they attained as of February 1975." *Id.* at 1222.

At defendants' request, we then certified an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on the question of whether Connecticut recognizes such prescriptive avigation and clearance easements. *See County of Westchester v. Town of Greenwich,* 793 F.Supp. 1195 (S.D.N.Y.1992). The Second Circuit, in turn, certified three questions to the Connecticut Supreme Court on whether avigation and clearance easements could be acquired by prescription in Connecticut, and on the scope of a clearance easement or clear zone. *See County of Westchester v. Commissioner of Transp.,* 986 F.2d 624 (2d Cir.1993).

The Connecticut Supreme Court did not reach the certified questions, finding instead that plaintiff could not have acquired an easement by prescription because its use of the airspace above defendants' property was not sufficiently adverse, under either federal or state law. *See County of Westchester v. Town of Greenwich,* 227 Conn. 495, 629 A.2d 1084 (1993). Pursuant to the Connecticut Supreme Court's decision, the Second Circuit reversed our grant of partial summary judgment to the County on its prescriptive easement claim, and remanded for further proceedings. *See County of Westchester v. Commissioner of Transp.,* 9 F.3d 242, 246–47 (2d Cir.1993).

After this long and winding road, the only legal issue left before us is plaintiff's claim under common law public nuisance. All parties are moving for summary judgment.

## III. DISCUSSION

### 1. Summary Judgment Standard

■ To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, we must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Summary judgment is only warranted when no reasonable trier of fact could find for the non-moving party. *Murray v.*

*National Broadcasting Co.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

While there are minor disputes between the parties on factual issues, none are material to the resolution of the instant motions.

### 2. Connecticut Statute on Air Encroachments

■ Before discussing the County's common law claim that defendants' trees constitute a public nuisance, we must consider defendants' argument that Connecticut General Statute § 15–73 settles the whole nuisance issue. Defendants argue that this statute provides that airport approach surface obstructions may only be considered public nuisances when an obstruction clearance easement has previously been acquired. Under this interpretation, defendants win, because the County has no such easement.

We do not read the statute as defendants would like us to. The statute provides:

Where necessary in order to provide unobstructed air space for the landing and taking-off of aircraft, in case of airports, heliports and restricted landing areas acquired or operated by the state, the commissioner, and, in the case of municipal airports, the municipality, is granted authority to acquire ... easements through or other interests in air space over land or water ... as are necessary to insure safe approaches to the landing areas of such airports, heliports and restricted landing areas and the safe and efficient operation thereof.... No person shall ... cause to be planted or permit to grow higher any tree or trees or other vegetation, which encroach upon any airport protection privileges acquired pursuant to the provisions of this section. Any such encroachment is declared to be a public nuisance and may be abated in the manner prescribed by law for the abatement of public nuisances....

C.G.S.A. § 15–73.

As the County points out, this statute is inapplicable to the instant case, because by its own terms it only applies to "airports ... acquired or operated by the state [i.e. Connecticut]." Furthermore, this statute is sim-

ply silent about situations, such as the instant one, where the municipality has failed to acquire property interests sufficient to insure safe approaches to runways. We do not discern any intent in the statute to occupy the entire field of nuisance as regards airports and their neighbors.

### 3. Public Nuisance elements.

 The parties agree on the elements of a claim of public nuisance under Connecticut law.[3]

[I]n order to prevail on a claim of nuisance, a plaintiff must prove that: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was a proximate cause of the plaintiffs' injuries and damages." *Filisko v. Bridgeport Hydraulic Co.*, 176 Conn. 33, 35–36, 404 A.2d 889 (1978).

*Connecticut v. Tippetts–Abbett–McCarthy–Stratton*, 204 Conn. 177, 183, 527 A.2d 688 (1987). Whether any of these elements is present is ordinarily a question of fact for the trier. *Filisko v. Bridgeport Hydraulic Co.*, 176 Conn. 33, 36, 404 A.2d 889 (1978). An additional element for claims of public nuisance is that the alleged nuisance violates public rights, and produces a common injury. *Couture v. Board of Educ.*, 6 Conn.App. 309, 314–15, 505 A.2d 432, 435 (App.Ct.1986).

 Defendants argue that in addition to these elements, the WCA must also show that defendants' conduct was intentional. Defendants cite our 1990 opinion, in which we stated that both sides agreed that plaintiff must prove that " 'the alleged nuisance was absolute, that is, that the defendants' intentional conduct, rather than their negligence, caused the condition deemed to be a nuisance.' " 745 F.Supp. 951, 958 (quoting *Tippetts–Abbett*, 204 Conn. at 183, 527 A.2d 688). However, nowhere in the rest of that opinion, or in our other opinions, did we discuss this element of plaintiff's case.

Whatever the situation was in 1990, plaintiff's current position is that it is not required to prove that defendants' conduct was intentional. Plaintiff points out that *Tippetts–Abbett* made clear that the requirement to prove intentional conduct rather than negligence arose because the plaintiff in that case was alleging an *absolute* public nuisance. *Id.* at 183, 527 A.2d 688. The County, however, does not allege that defendants' trees constitute an absolute public nuisance, so there is no reason to require the County to prove that defendants acted intentionally.

Defendants also argue that they cannot be considered negligent; we will consider this contention later.

### 4. Natural Tendency to Create Danger

Defendants argue that plaintiff cannot establish that their trees have "a natural tendency to create danger and inflict injury upon person or property." *Id.* Plaintiff counters that this determination must be made in context, and that when trees intrude in airspace that needs to be kept clear for safe air travel, then they are indeed inherently dangerous.

██ The essence of this element is that it was reasonably foreseeable that the kind of injury complained of could result from the condition alleged to be a nuisance. In *Laspino v. City of New Haven*, 135 Conn. 603, 67 A.2d 557 (1949), the court overturned the trial court's conclusion that a waterway in a partially developed park was a public nuisance. The court declared:

[T]here was no evidence that the very nature of the condition was such that it was likely to cause injury. The city could not have anticipated that this body of water would be used for boating during the first week of April.... That teen-age boys would drown in it using an inadequate homemade boat which they had found in the undeveloped area was a contingency which cannot be said to have been a "danger" likely to arise from the very nature of the current in the break under the conditions existing, even if the current had been

---

**3.** As we noted in an earlier opinion, the parties agree that Connecticut's common law governs, since the real property at issue is in Connecticut. *See* 745 F.Supp. 951, 957 n. 7.

increased by the changes made. *See Brock–Hall Dairy Co. v. New Haven,* 122 Conn. 321, 326, 189 A. 182.

*Id.* at 609–10, 67 A.2d 557.

Following the *Laspino* court's explanation of this element, we find as a matter of law that defendants' trees have "a natural tendency to create danger and inflict injury upon person or property," *Tippetts–Abbett,* 204 Conn. at 183, 527 A.2d 688. No reasonable fact finder could fail to find that defendants' trees pose a real danger to airplanes and air travellers using the full length of Runway 11/29, given plaintiff's uncontroverted affidavits as to the hazard posed by the trees, and given that the FAA ordered the runway shortened in 1988 because of the hazard the trees posed to air navigation. Moreover, no reasonable fact finder could fail to find that this risk was eminently foreseeable, since everyone knows that trees and airplanes are natural enemies.

█ This first element of a nuisance claim can also be validly interpreted as focusing on the injury to the County and the public from not being able to make full use of the runway, rather than on the danger to aircraft and air travellers posed by the trees. This interpretation is bolstered by the fact that a condition may still be a nuisance if it only involves damage to property, as opposed to danger to people. *See Cyr v. Town of Brookfield,* 153 Conn. 261, 216 A.2d 198 (1965) (plaintiff properly alleged a nuisance in claiming that town had blocked a drain, causing damage to his property by water accumulation); *see also Hillman v. Town of Greenwich,* 217 Conn. 520, 587 A.2d 99 (1991). Moreover, this element of a nuisance claim can be defined without using the word "danger," with its connotations of physical harm to persons. *See Butzgy v. Town of Glastonbury,* 203 Conn. 109, 121, 523 A.2d 1258 (1987) (plaintiff must allege a "noxious quality [such] that the 'natural tendency of the condition was to cause damage and inflict injury.'") (citing *Warren v. City of Bridgeport,* 129 Conn. 355, 359, 28 A.2d 1 (1942)).

Under this approach, plaintiff also satisfies the first element of its nuisance claim. Clearly, it was reasonably foreseeable that the kind of injury complained of (substantially interfering with the public airspace by forcing a shortening of Runway 11/29) could result from defendants' trees. Indeed, defendants received actual notice that their trees had caused such an injury when the County contacted them in 1989 and in 1990 with a request to trim their trees.

**5. Continuing Danger**

Defendants argue that the danger created by their trees is not a continuing one, because the WCA has been using Runway 11/29 safely since it shortened it in 1988. This argument is not convincing. As we noted above, the word "danger" may refer to either people or property. Accordingly, we find as a matter of law that the danger of substantially impairing the full use of plaintiff's runway that is posed by defendants' trees is a continuing one, since the trees continue to render unusable part of Runway 11/29's clear zones.

Moreover, even if we focus on the danger the trees pose to airplanes and their passengers, we must find that the danger is continuing. The trees continue to intrude into Runway 11/29's clear zones; the only reason they do not actively menace airplanes is that the County has been forced to reduce the usable length of the runway. If this means that the danger posed by defendants' trees is not "continuing," then any plaintiff with a nuisance claim against a dangerous condition who temporarily curtailed his activity to avoid the danger would have his case dismissed. It would be absurd to punish plaintiffs for taking steps to avoid harm. However the danger is defined, it is clearly a continuing one.

**6. Proximate Cause**

Defendants argue that it was the FAA's enforcement action, rather than their trees, that was the proximate cause of the shortening of Runway 11/29. This argument does not hold up.

█ The concept of legal causation includes two components—causation in fact, and proximate causation. *Doe v. Manheimer,* 212 Conn. 748, 757, 563 A.2d 699 (1989). Causation in fact is present when the injury

would not have occurred but for the acts or omissions at issue. *Id.* The parties do not dispute that causation in fact is present in this case.

■ Proximate causation is present when the acts or omissions at issue were a "substantial factor" in producing the plaintiff's injury. *Id.* at 758, 563 A.2d 699.

The "substantial factor" test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, " 'whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.' " [*Coburn v. Lenox Homes, Inc.,* 186 Conn. 370, 384, 441 A.2d 620 (1982).]

... "We have consistently adhered to the standard of 2 Restatement (Second), Torts § 442B (1965) that a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, *except* where the harm is intentionally caused by the third person *and* is not within the scope of the risk created by the defendant's conduct." [*Tetro v. Town of Stratford,* 189 Conn. 601, 605, 458 A.2d 5 (1983).] "The reason [for the general rule precluding liability where the intervening act is intentional or criminal] is that in such a case the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him." 2 Restatement (Second), Torts § 442B, comment c. "Such tortious or criminal acts may in themselves be foreseeable, [however,] and so within the scope of the created risk...." Id.; see also 2 Restatement (Second), Torts §§ 448 and 449.

*Id.* at 758–59, 563 A.2d 699 (citations abridged; other alterations in original).

With this as background, the only reasonable conclusion is that defendants' trees are a proximate cause of the shortening of Runway 11/29. Moreover, the FAA's order cannot be an intervening act that absolves defendants of responsibility, because it was well within the scope of risk created by defendants' growing of trees. Indeed, it was more than just a risk—the FAA's action was a fact which had already occurred, and which defendants were aware of, well before this lawsuit was begun.

Defendants also argue that the proximate cause of the shortening of Runway 11/29 was the County's failure, over the years, to secure sufficient property rights to keep the runway's clear zones unobstructed. This allegation, however, is too remote in time to serve as a proximate cause. Also, it is more a species of causation in fact than of proximate causation. One could say with equal reason that the "proximate cause" of the shortening of Runway 11/29 was defendants' planting of their trees.

### 7. Public rights violated

Next, we consider whether plaintiff has shown that defendants' alleged nuisance is a *public* nuisance.

"Nuisances are public where they violate public rights, and produce a common injury," and where they constitute an obstruction to public rights, "that is, the rights enjoyed by citizens as part of the public." 39 Am.Jur. 286. "... if the annoyance is one that is common to the public generally, then it is a public nuisance.... The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence." *Nolan v. New Britain,* 69 Conn. 668, 678, 38 Atl. 703 [1897].

*Higgins v. Connecticut Light & Power Co.,* 129 Conn. 606, 611–12, 30 A.2d 388 (1943) (citations abridged), *quoted in Couture v. Board of Educ.,* 6 Conn.App. 309, 314–15, 505 A.2d 432, 435 (1986).

■ It is clear that interfering with airspace used by the public amounts to the obstruction of a public right. Congress has recognized "a public right of freedom of transit through the navigable airspace of the United States," 49 U.S.C.App. § 1304, which includes "airspace needed to insure safety in the takeoff and landing of aircraft," 49 U.S.C. § 40102(a)(30) (formerly 49 U.S.C. § 1301(26)). Just as a claim of public nui-

sance may be brought in Connecticut for interfering with the public's right to travel a highway, *see Maggiore v. Courcey*, 1990 WL 283821 (Super.Ct.1990) and *Salomone v. Boulanger*, 32 Conn.Supp. 115, 342 A.2d 61 (Super.Ct.1975), a claim of public nuisance may be brought for interfering with the public's right to travel the airways. Thus, the County has satisfied this element of its claim, since it is undisputed that many of defendants' trees are obstructing Runway 11/29's clear zones, which are a part of the navigable airspace through which the public has a right of transit.

### 8. Negligence of Defendants

■ We have already established that the County does not have to establish that defendants acted intentionally. However, defendants argue that there is a negligence element to plaintiff's claim, and that plaintiff cannot satisfy this element because a landowner has no duty regarding the natural growth of trees.

This is a dubious proposition. None of the Connecticut cases cited thus far concerning public or private nuisances discuss the negligence of the defendant as a separate element of a nuisance claim. Indeed, the *Quinnett v. Newman* court noted that "[t]he term nuisance refers to the condition that exists and not to the act or failure to act that creates it." 213 Conn. 343, 348, 568 A.2d 786 (1990). Moreover, it is hard to see how the issue of whether the defendant was negligent would add anything to the third element of a nuisance claim, which inquires into whether the defendant's use of his land is unreasonable.

The only case defendants cite is *Coyle v. City of Waterbury*, 1991 WL 270291, 1991 Conn.Super. LEXIS 2824 (Super.Ct.1991), in which the court found that no claim of public nuisance could be maintained against a property owner for a root from a tree on his property that had created a large gap in an adjacent public sidewalk. The *Coyle* court stated that an abutting property owner is

only liable for unsafe conditions on a public sidewalk when the property owner has committed some affirmative act, and that the natural growth of a tree root was not such an affirmative act. *Id.* However, this case affords no help to plaintiff as to its negligence arguments, for the court also stated "[o]f course, the landowner may have a responsibility to prune the tree's branches if they become a nuisance." *Id.* at *2, 1991 Conn.Super. LEXIS 2824 at *2.

The true basis for the court's decision seems to be not that the growth of the root was not an affirmative act, but that the duty of constructing a sound sidewalk that will resist natural erosion and distortion due to soil conditions underneath and adjacent to the sidewalk (including roots) rests on the public entity constructing the sidewalk. *See id.* at *1, 1991 Conn.Super. LEXIS 2824 at *2–*3. This is an entirely sensible holding, since it places the legal burden on the party that is (presumably) far more knowledgeable about sidewalk construction. Viewed from this perspective, the reasoning of the *Coyle* court is similar to the reasoning we will employ in the following discussion on the reasonableness of defendants' land use, which will also turn on the public entity's initial duty to properly establish public throughways.[4]

### 9. Reasonableness of Defendants' Land Use

The crucial element of a public nuisance claim, for this case, is whether defendants' use of their land was unreasonable. (Plaintiff does not argue that defendants' use of their land was unlawful). " 'Determining unreasonableness is essentially a weighing process, involving a comparative evaluation of conflicting interests in various situations according to objective legal standards.' " *Haczela v. City of Bridgeport*, 299 F.Supp. 709, 711–12 (D.Conn.1969) (quoting *O'Neill v. Carolina Freight Carriers Corp.*, 156 Conn. 613, 617, 244 A.2d 372 (1968)).

We begin with the proposition that growing trees on one's own property is not nor-

---

4. The Town of Greenwich makes a claim similar to the defendants' group claim as to negligence, noting that in Connecticut a municipality may only be liable for a nuisance that it created by some positive act. *Lukas v. City of New Haven*, 184 Conn. 205, 209, 439 A.2d 949 (1981). However, the Town of Greenwich admits that it planted and maintained the trees at issue, so this argument does not advance its position.

mally an unreasonable activity. *See Griggs v. Allegheny County*, 369 U.S. 84, 89, 82 S.Ct. 531, 533–34, 7 L.Ed.2d 585 (1962) ("[T]he use of land presupposes the use of some of the airspace above it. . . . Otherwise no home could be built, no tree planted, no fence constructed, no chimney erected."). Plaintiff argues that the act of growing trees becomes unreasonable in this situation because there is an airport right next to the trees. *Cf. Maggiore v. Courcey*, 1990 WL 283821 (Conn.Super.Ct.1990) (claim of public nuisance found to be validly stated when it alleged that defendant had created a dangerous condition by allowing vegetation on the edge of defendant's property to impede visibility on an adjacent public highway); *Salomone v. Boulanger*, 32 Conn.Supp. 115, 342 A.2d 61 (Super.Ct.1975) (same). Defendants counter that it is plaintiff, not they, who is being unreasonable, because the County of Westchester has been operating an airport without ever having secured the property rights necessary to keep it fully operational.

■ We believe that defendants are correct. The Supreme Court's opinion in *Griggs*, 369 U.S. 84, 82 S.Ct. 531, makes clear that an airport has a responsibility to secure the property rights necessary for the operation of the airport, and that if it takes those rights instead of paying for them, it must compensate the landowners. *Id.* 369 U.S. at 89–90, 82 S.Ct. at 533–34 ("We see no difference between [the local authority's] responsibility for the air easements necessary for operation of the airport and its responsibility

for the land on which the runways were built.").[5] Furthermore, FAA regulations strongly imply that among the property rights necessary for the operation of an airport are property rights sufficient to keep the runways' clear zones free of obstructions in the future. *See* 14 C.F.R. § 151.9 (whenever federal funds are allocated for airports to develop new runways, or improve or repair existing runways, the airport must acquire property rights "giving it enough control to rid the clear zone of all obstructions . . . *and to prevent the creation of future obstructions.*" (emphasis added)).[6] It would be unreasonable to hold that the County, by operating an airport without the necessary property rights, had succeeded in transforming the reasonable activity of growing trees into an unreasonable use of land. Accordingly, plaintiff's nuisance claim must fail.[7]

## IV. Conclusion

It is clear as a matter of law that defendants' use of their land, in allowing trees to grow, is not unreasonable under the circumstances of this case. Accordingly, the County's public nuisance claim fails. Defendants' motions for summary judgment are granted, and plaintiff's motion for summary judgment is denied. The clerk is directed to enter judgment for defendants.

**SO ORDERED.**

■

---

5. The instant situation is somewhat different from the situation in *Griggs* because in that case the local authority decided where to build the airport, whereas in this case, the County inherited the airport from the military. However, this does not change the legal analysis. When the County took control of the WCA, it received only the existing rights of the prior owner and had the same duty to secure the necessary property rights for the operation of the airport as it would have had had it built the airport itself.

6. If the County had acquired a prescriptive easement sufficient to keep Runway 11/29's clear zones free of obstructions, then the County's initial unreasonableness might have been essentially cured by defendants' failure to object over the years. But no such easement was acquired (*see* Procedural History, *supra* ).

7. A further reason for not finding for the County on this element is that if the County were to prevail on its nuisance claim, then it will have taken some of defendants' property rights without compensation. If normally unobjectionable land use such as growing trees can be transformed into an "unreasonable" activity by the act of building an airport that lacks the necessary property rights for full operation, then there would be no reason for airports to ever bother paying for property rights beyond those needed for the land the airport actually occupies, because the airports could acquire the air easements they needed without cost by bringing nuisance suits against any landowner whose property contained structures blocking, or threatening to block, the airports' runways' clear zones. This would make a mockery of the Takings Clause.