**COUNTY OF WESTCHESTER, Plaintiff–Appellant–Cross–Appellee,**

v.

**TOWN OF GREENWICH, CONNECTICUT; Mildred Tomonto; Commissioner of Transportation of the State of Connecticut; Laurelton Nursing Home, Inc.; and Greenwich King Street Associates II, L.P., Defendants–Appellees,**

**The Convent of the Sacred Heart, Defendant–Appellee–Cross–Appellant.**

**Nos. 90, 198 and 236.**
**Docket 95–7010, 95–7096, 95–7440.**

United States Court of Appeals, Second Circuit.

Argued Nov. 9, 1995.

Decided Jan. 26, 1996.

Marguerite R. Wiess, Assistant County Attorney, County of Westchester, White Plains, New York (Marilyn J. Slaatten, Westchester County Attorney; Carol L. Van Scoyoc, Deputy County Attorney; of counsel), for Plaintiff–Appellant–Cross–Appellee.

Charles S. Warren, Robinson Silverman Pearce Aronsohn & Berman, New York City (Judith M. Gallent and Mark D. Risk, of counsel; John M. Callagy, Kelley Drye & Warren, New York City, of counsel), for Defendant–Appellee–Cross–Appellant.

Richard Blumenthal, Attorney General, State of Connecticut, Hartford, Connecticut (Cornelius F. Tuohy, Assistant Attorney General, of counsel), for amicus curiae The State of Connecticut.

Before: KEARSE and WINTER, Circuit Judges, and MILTON POLLACK,* Senior District Judge.

WINTER, Circuit Judge:

The County of Westchester appeals from Judge Goettel's grant of summary judgment dismissing its public nuisance claim against various landowners in Connecticut, including the Convent of the Sacred Heart. The County claims that trees growing on appellees' property constitute a public nuisance because they intrude into airspace so as to limit the usable length of Westchester County Airport Runway 11/29. We affirm Judge Goettel's grant of summary judgment. As a result, we need not reach Sacred Heart's protective cross-appeal claiming inverse condemnation.

## BACKGROUND

Although the trees bordering the County airport have prevailed in this matter, others have been put to the saw to enable the legal profession to follow the course of this litigation. *See County of Westchester v. Town of Greenwich,* 745 F.Supp. 951 (S.D.N.Y.1990) ("*Westchester I*"); *County of Westchester v. Town of Greenwich,* 756 F.Supp. 154 (S.D.N.Y.1991) ("*Westchester II*"); *County of Westchester v. Town of Greenwich,* 793 F.Supp. 1195 (S.D.N.Y.1992) ("*Westchester III*"), *certifying questions to Connecticut Supreme Court,* 986 F.2d 624 (2d Cir.1993), *and rev'd and remanded,* 9 F.3d 242 (2d Cir.1993) (per curiam), *and cert. denied,* —— U.S. ——, 114 S.Ct. 2102, 128 L.Ed.2d 664 (1994); *County of Westchester v. Town of Greenwich,* 870 F.Supp. 496 (S.D.N.Y.1994) ("*Westchester IV*"); and *County of Westchester v. Town of Greenwich,* 227 Conn. 495, 629 A.2d 1084 (1993).

Westchester County, New York owns and operates an airport on property adjacent in the west to a small lake and in the east to the Connecticut border. The airport was built in 1942–43 by the United States Army Corps of Engineers for military use. Towards the end of World War II, the federal government turned the airport over to the County, and it has been used for civil aviation since that time. Westchester County Airport is now a busy regional facility for private and commercial aircraft.

There are two runways at the airport. Runway 16/34 is the principal runway and is used by the larger commercial and private planes. It is 6,550 feet long and is oriented on an approximately north-south axis. Runway 11/29, the shorter of the two, is used generally by smaller airplanes and is the subject of the instant lawsuit. It is oriented on an approximately east-west axis and measures 4,450 feet at full length. Its western

---

* The Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation.

end is by the lake. Its eastern end is only some 300 feet from the Connecticut state boundary. As a result, the flight path for Runway 11/29 frequently requires aircraft to fly at low altitudes over land in Greenwich, Connecticut that abuts the airport property and is in large part significantly higher than the runway.

Over time, trees on the adjacent Connecticut property have grown to heights that affect flight paths. Affidavits from pilots indicate that the distance between the treetops and the landing gear of airplanes had so diminished by the 1970s that the pilots began to use a higher, steeper approach than normal for Runway 11/29. The Federal Aviation Administration ("FAA") expressed concerns to the County about the trees no later than 1983, and perhaps even as early as 1969. In 1984, the FAA explicitly required the County to issue a Notice to Airmen warning pilots about the trees and advising them to use an angle of descent of nine degrees instead of the usual three degrees. In late 1988 or early 1989, the FAA ordered the County to shorten the usable length of Runway 11/29 by approximately 1,350 feet because of the trees.

The County filed the instant action in February 1990, asserting a variety of claims for declaratory and injunctive relief. The district court granted a motion by the Connecticut Commissioner of Transportation to be dismissed as a defendant as to all claims. *See Westchester I,* 745 F.Supp. at 955. It also dismissed the County's claims based on the Commerce Clause, *see id.,* the Federal Aviation Act, *see id.* at 957, and statutory public nuisance under Connecticut law, *see id.* at 958. However, it denied appellees' motion to dismiss the County's common law claims of public nuisance, *see id.* at 959, and easement by prescription, *see id.* at 962. The district court also dismissed appellees' counterclaims based upon inverse condemnation and equitable servitude. *See Westchester II,* 756 F.Supp. at 156–57.

In 1992, the district court granted partial summary judgment for the County, holding that it had acquired prescriptive avigation and clearance easements to the airspace above appellees' property, *see Westchester*

*III,* 793 F.Supp. at 1207, 1211. It ordered that the County be permitted to cut back certain trees affecting use of Runway 11/29. *See id.* at 1222. On appeal, we certified questions to the Connecticut Supreme Court as to whether avigation and clearance easements could be acquired by prescription under Connecticut law and on the scope of a clearance easement. *See County of Westchester v. Commissioner of Transp.,* 986 F.2d 624 (2d Cir.1993).

The Connecticut Supreme Court did not reach the certified questions, holding instead that the County could not have acquired an easement by prescription because its use of the airspace above appellees' property was not sufficiently adverse under either federal or state law. *See County of Westchester v. Town of Greenwich,* 227 Conn. 495, 504, 629 A.2d 1084, 1089 (1993). Pursuant to the Connecticut Supreme Court ruling, we reversed the district court's grant of partial summary judgment to the County on its prescriptive easement claim and remanded for further proceedings. *See County of Westchester v. Commissioner of Transp.,* 9 F.3d 242, 246–47 (2d Cir.1993) (per curiam), *cert. denied,* —— U.S. ——, 114 S.Ct. 2102, 128 L.Ed.2d 664 (1994).

Upon remand, Westchester's only remaining claim was that based on a common law public nuisance theory. The district court granted summary judgment for appellees, *see Westchester IV,* 870 F.Supp. at 505, and the County now appeals. The Convent of the Sacred Heart has filed a cross-appeal from the district court's earlier dismissal of its inverse condemnation claim. Because an inverse condemnation claim cannot succeed unless the County prevails on the public nuisance claim, the cross-appeal is protective in nature.

## DISCUSSION

█ We review a district court's grant of summary judgment *de novo,* viewing all the evidence in the light most favorable to the party opposing the motion. *United States v. Articles of Banned Hazardous Substances,* 34 F.3d 91, 96 (2d Cir.1994) (citation omitted). Summary judgment may be granted

only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ We emphasize that the County's claim is grounded in public rather than private nuisance. The County must, therefore, establish that some offensive or obstructive condition interferes with a right common to the general public. *See State v. Tippetts–Abbett–McCarthy–Stratton,* 204 Conn. 177, 183, 527 A.2d 688, 692 (1987); *see also* W. Page Keeton et al., *Prosser and Keeton on Torts* §§ 87, 90 at 619–26, 643–52 (5th ed. 1994) (distinguishing private and public nuisance). In addition, the County must show that: (i) the condition complained of has a natural tendency to create danger and inflict injury upon persons or property, (ii) the danger is a continuing one, (iii) the use of the land is unreasonable or unlawful, and (iv) the existence of the nuisance is the proximate cause of the plaintiff's injuries and damages. *Tippetts,* 204 Conn. at 183, 527 A.2d at 692; *Filisko v. Bridgeport Hydraulic Co.,* 176 Conn. 33, 35–36, 404 A.2d 889, 891 (1978). A failure to establish either a right common to the public in the airspace or any one of the four specified elements is thus fatal to the County's claim. Judge Goettel held that the County failed to establish element (iii) because appellees have not used their property in an unreasonable manner.[1] *See Westchester IV,* 870 F.Supp. at 504–05. We agree.

■ The determination of whether a landowner's use of property is reasonable involves a balancing of the competing interests of the plaintiff and the defendant landowner. *Haczela v. City of Bridgeport,* 299 F.Supp. 709, 711–12 (D.Conn.1969) (quoting *O'Neill v. Carolina Freight Carriers Corp.,*

156 Conn. 613, 617, 244 A.2d 372, 374 (1968)). Common sense dictates that the quite ordinary activity of growing trees [2] on one's land is, without more, presumptively reasonable. As the United States Supreme Court has pointed out, "the use of land presupposes the use of some of the airspace above it. . . . Otherwise no home could be built, no tree planted, no fence constructed, no chimney erected." *Griggs v. Allegheny County,* 369 U.S. 84, 89, 82 S.Ct. 531, 533, 7 L.Ed.2d 585 (1962); *see also United States v. Causby,* 328 U.S. 256, 264, 66 S.Ct. 1062, 1067, 90 L.Ed. 1206 (1946) (acknowledging, for purposes of takings analysis, that although "the airspace is a public highway[,] . . . it is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere").

Balanced against the presumptively reasonable activity of growing trees is the County's interest in raising the existing level of operations at its airport. We believe that the County's interest is of little weight because the County acquired and operates an airport without having secured the property rights necessary to the desired level of operation. In *Griggs,* the Supreme Court noted that a local airport owner is as responsible "for the air easements necessary for operation of the airport [as it is for] the land on which the runways were built." 369 U.S. at 89, 82 S.Ct. at 534. Current FAA regulations also state that securing air easements is the responsibility of the airport. *See* 14 C.F.R. §§ 151.9(a), 151.11. We perceive no reason to import into the common law the contrary proposition that an airport's neighbors bear the responsibility for limiting the quite ordinary use of their land to permit an airport to engage in a particular level of operations.

---

1. The County could not, and does not, argue that appellees' use of their land is unlawful.

2. There is evidence in the record that the uses of appellees' property with a potential for interfering in airspace affecting Runway 11/29 are not limited to growing trees, although the County appears for the moment to limit its pursuit of remedies to deforestation in Runway 11/29's eastern "clear zone." *See* 14 C.F.R. §§ 77.21–77.25 (requiring that a certain amount of air-

space in the approach to a runway be kept clear of vertical structures). There is evidence that the Convent's flagpole and its roofs and chimneys have a height that under FAA regulations causes them to intrude into what would be Runway 11/29's clear zone, if the runway were open to its full length. There was also testimony that even field hockey goals on athletic fields might intrude on Runway 11/29's full-length clear zone.

Judge Goettel overstated the matter only a little, if at all, in noting:

> if the County were to prevail on its nuisance claim, then it will have taken some of defendants' property rights without compensation. If normally unobjectionable land use such as growing trees can be transformed into an "unreasonable" activity by the act of building an airport that lacks the necessary property rights for full operation, then there would be no reason for airports to ever bother paying for property rights beyond those needed for the land the airport actually occupies, because the airports could acquire the air easements they needed without cost by bringing nuisance suits against any landowner whose property contained structures blocking, or threatening to block, the airports' runways' clear zones.

*Westchester IV,* 870 F.Supp. at 505 n. 7.

The overstatement, if any, follows from the fact that the County acquired an already operational airport from the federal government and did not originally construct it. The County argues that because it lacks the power of eminent domain over land in Connecticut, it never had the means to acquire or enforce the necessary property rights. We are not impressed by the County's argument. The risk of being unable to acquire by law further land to the east, as well as the potential for some interference with airspace given the higher elevation of that land, was evident when the airport was acquired. At that time, the County had every reason to anticipate that if the ordinary use of higher land to the east caused some intrusion into airspace, the level of operations at the airport might be affected. The County thus acquired an airport with an inherent potential for future limits on flight operations.

We see no reason why it makes a difference whether the County received the airport as a gift rather than constructing or purchasing it.[3] The County appears to concede that one who builds an airport with limited property rights cannot later, absent powers of

eminent domain, force its neighbors to forgo ordinary use of their land. Had the airport been purchased, we would view the price paid as presumptively reflecting the value of limited property rights, and the neighboring landowners would prevail. Surely, the fact that the County received the airport as a gift does not endow the County with rights against adjacent landowners that it would not otherwise have.

The only Connecticut precedents remotely supportive of the County's claim are two decisions holding that use of one's land so as to obstruct a traveler's vision of a road constitutes a public nuisance that supports a claim by an injured party against the landowner. *See Maggiore v. Courcey,* No. 27–83–19, 1990 WL 283821 (Conn.Super.Ct. Aug. 2, 1990) (pine tree); *Salomone v. Boulanger,* 32 Conn.Supp. 115, 342 A.2d 61 (Super.Ct.1975) (ivy-covered fence). These decisions do not undermine our conclusion. We may assume a parallel for many purposes between roadways and frequently used airspace. However, we believe that the relationship of a landowner to an injured traveler on a public road involves a very different balancing of interests than that involved in the relationship of an airport to neighboring property owners.

Many roads were located where they are long before the invention of fast-moving automobiles created the problem of dangerous obstructions of view on private property. Users of public roads have a strong interest in clear fields of vision. However, as a practical matter, travelers cannot cause government to prohibit such obstructions or negotiate with fronting landowners for removal. Most important, the vegetation or structures on private land that obstruct a traveler's view of the road generally involve a very small portion of the property and are not fundamental to the owner's use of the land. In the usual case, the landowner may need to do no more than remove one shrub or tree from a corner or curve.

---

**3.** It appears from an affidavit by James Harding, the Commissioner of Public Works for Westchester County from 1942 to 1968, that the site of the airport was selected by the County while funding for construction came from the federal government. The County's participation in site selection certainly does not strengthen its case.

In the airport/landowner case, the practical problem of airspace over a runway approach existed when the airport was constructed. New technology has altered, but not fundamentally changed, the need for such airspace. Those who wish to build or operate an airport can negotiate with adjoining landowners before going ahead with the project. This ability is recognized by FAA rules governing the clear space necessary to a runway approach. 14 C.F.R. §§ 77.21–77.25; *see also supra* n. 2. There is an absolutist cast to this regulation in that it does not balance safety concerns against neighboring land use. The regulations say that clear space must exist or runway use limited, *see generally* 14 C.F.R. §§ 77.21–77.25, and places upon the operators of airports the burden of obtaining the necessary land, *see id.* We need not consider whether state law nuisance claims are preempted to conclude that the position taken by the regulators principally responsible for air travel weighs heavily in balancing the airport's interests against those of the adjoining landowners under Connecticut law.

In addition, a claim that ordinary forestation or structures on land intrude on airspace of a runway approach will, if relief is granted, frequently have a very substantial effect on an adjoining landowner's use of land. In this matter, for example, the County has to date challenged only the growing of trees. The exact number to be cut was never determined, but the County targeted a substantial number. Future growth will no doubt bring yet more trees into the County's cross-hairs. Moreover, the record shows that a far broader claim involving existing Convent structures and even athletic fields could be made on the same theory. *See supra* n. 2. We therefore find that the Connecticut cases allowing injured road travelers to bring public nuisance claims against obstructing landowners are inapposite.

## CONCLUSION

We agree with the district court that Westchester failed to raise a triable issue regarding the reasonableness of appellees' use of their land. This is sufficient to affirm Judge Goettel's grant of summary judgment for appellees, and we need not address the remaining elements of the County's public nuisance claim. Also, because we affirm, we need not address Sacred Heart's protective cross-appeal on the issue of inverse condemnation.

Affirmed.